In re Johnson.

(No. C-77085—Decided March 22, 1978.)

*Ms. V. Ruth Klette* and *Mr. Gerald T. Ashcraft*, for appellants Lonnie and Mary Walters.

*Mr. Leo D. Morand,* for appellees, Harold and Sheila Johnson.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas, Probate Division, of Hamilton County; transcript of proceedings; and the briefs and oral arguments of counsel.

Appellants, Lonnie and Mary Walters, residents of Covington, Kentucky, are the natural parents of three minor children, one of whom—Patricia, now five years old —is the subject of this adoption proceeding. Early in 1974, appellants were having marital difficulties and were separated. Requiring someone to take the children so she could seek employment, Mary Walters asked a friend, Darlene Johnson, if her parents Harold and Sheila Johnson could take care of Patricia. The Johnsons agreed and in April 1974 took Patricia into their home in Cincinnati. In July 1974, after a hearing in the Kenton County Court, Juvenile Division (Commonwealth of Kentucky), it was ordered that temporary legal custody of all the minor Walters children be given to the Department of Human Resources of the Commonwealth of Kentucky and that

temporary physical custody of Patricia remain with Harold and Sheila Johnson. In September 1974, Lonnie Walters was ordered to pay child support into the court, which in turn sent payments to Mrs. Johnson. He made these payments from September 1974 through February 1975. Mary Walters lived in Florida during this time with a sister, until October 1975 when she returned to Kentucky and became reconciled with her husband. While in Florida, Mrs. Walters' contact with the Johnsons consisted of several telephone conversations.

On April 20, 1976, appellees, Harold and Sheila Johnson, filed a petition in the Court of Common Pleas of Hamilton County to adopt Patricia. The petition alleged that Lonnie and Mary Walters had willfully failed to properly support and maintain the child for a period of more than two years. The Walters filed an answer and counterclaim demanding that Patricia be returned to their control. After a hearing at which the Walters contested the proposed adoption, the Probate Division entered an interlocutory order of adoption on June 29, 1976, and on January 3, 1977, it rendered a final order of adoption. From this final order Lonnie and Mary Walters appeal.

The first assignment of error is that the Court of Common Pleas did not have jurisdiction over the child, whose legal custody was vested in the Kenton County Court, Juvenile Division, of the Commonwealth of Kentucky, and that the Probate Division failed to give full faith and credit to the jurisdiction and orders of the Kentucky court. Appellants base this argument on the final paragraph of R. C. 3107.06:[1]

"No final decree or interlocutory order of adoption shall be entered with respect to any child in the custody of the juvenile court or concerning whose custody or disposition proceedings are pending in such court, until such custody or proceedings have been suspended or terminated by such court."

---

[1] In 1976, the Ohio legislature revised R. C. 3107.06 and other adoption statutes, effective January 1, 1977. Because the instant case was heard in 1976, the old law is applicable.

At first glance the statute might seem to mandate the result which appellants suggest. However, a comparison of the jurisdiction granted by statute to Juvenile Courts in Ohio and that granted by The Kentucky Revised Statutes to Kentucky Juvenile Courts leads to an opposite result. R. C. 2151.353 gives an Ohio Juvenile Court the power to make the following dispositions of a child adjudged to be abused, neglected, or dependent: (1) permit the child to remain with his parents; (2) commit the child to the temporary custody of certain listed departments or organizations; (3) commit the child to the temporary custody of a state institution or agency; (4) commit the child permanently to the welfare department or a certified agency, thereby divesting the parents of all legal rights and obligations. On the other hand, Ky. R. S. 208.020, which grants jurisdiction to the Juvenile Court for proceedings concerning a dependent or neglected child, contains the following paragraph:

"(7) Nothing in this chapter shall deprive other courts of the jurisdiction to determine the custody or guardianship of children upon writs of habeas corpus, or to determine the custody or guardianship of children when such custody or guardianship is incidental to the determination of other causes pending in such other courts; nor shall anything in this chapter affect the jurisdiction of circuit courts over adoptions and proceedings for termination of parental rights. The juvenile court shall have no jurisdiction to make permanent awards of custody of a child, but if the court finds an emergency to exist affecting the welfare of a child, it may make temporary orders for its custody, pending the outcome of proceedings in circuit court to determine its permanent custody. Such orders shall be entirely without prejudice to the proceedings for permanent custody of the child, and shall remain in effect until modified or set aside by the court. Upon the entry of a temporary or final judgment in the circuit court, awarding custody of such child, all prior orders of the juvenile court in conflict therewith shall be deemed cancelled."

It is apparent that the powers granted to Ohio Juvenile

Courts far exceed the powers of Kentucky Juvenile Courts. The last paragraph of R. C. 3107.06, drafted in the context of the court system in Ohio, undoubtedly contemplates a Juvenile Court vested with the powers listed in R. C. 2151.-353. We do not believe that R. C. 3107.06 mandates that the ongoing jurisdiction of the Kenton County Court, Juvenile Division, should bar an Ohio Probate Court from issuing an adoption order. Temporary custody had been awarded to the Johnsons in July 1974, and no further proceedings were pending at the time of the adoption proceedings. Also relevant is the provision of Ky. R. S. 208.020 that proceedings of a Kentucky Juvenile Court shall not affect the jurisdiction of its Circuit Courts over adoptions. Although this statute of course has no effect in Ohio, it nevertheless indicates the limited nature of the jurisdiction of the Kentucky Juvenile Court. If the Kentucky court empowered to grant adoptions, that is, the Circuit Court, does not have to defer to the jurisdiction of a Kentucky Juvenile Court, neither should a similarly empowered Ohio court have to do so under the Full Faith and Credit Clause.

Thus, we find no bar to the jurisdiction of the Probate Court. The adoptive parents are Ohio residents, and the child resided in Ohio as well. The assignment of error is without merit.

In the second assignment of error, appellants urge that the court erred by failing to dismiss the petition for a failure to state a good cause of action. They argue that the petition did not allege all the facts required by R. C. 3107.-03. Our examination of the petition reveals that the petitioners complied with the statutory requirements. In the petition, the address of the natural father, Lonnie Walters, was given as "unknown." Even if this were to be considered a technical defect, Mr. Walters' rights in the proceeding were not prejudiced by any lack of notice. He co-signed the receipt for the registered letter of notice addressed to his wife Mary Walters, and he appeared and testified at the hearing.

The third assignment of error charges that the court

erred in granting the adoption without the necessary consent of the legal guardian of the child. Appellants contend that temporary legal custody had been granted in 1974 to the Department for Human Resources of the Commonwealth of Kentucky, and the consent of this department is required by R. C. 3107.06(C) and (D).

To address this assignment we must first examine the nature of the custody order entered by the Kenton County Juvenile Court in July 1974. That court has no jurisdiction to make a permanent custody award. In an emergency it can make temporary custody awards. Ky. R. S. 208.020(7). The order apparently created a dual divided temporary custody, giving appellees temporary *physical custody* of Patricia and the Department for Human Resources temporarily *legal custody*. At no time were the Walters' parental rights terminated, for the Juvenile Court did not have the power to issue such an order. No person or agency was ever designated "permanent custodian."

R. C. 3107.06(C) requires that consent be given by the guardian of the person of the child, if one has been appointed and is acting as such. R. C. 2111.01(A) defines "guardian" as "any person, association, or corporation appointed by the probate court to have the care and management of the person, the estate, or both of an incompetent or minor * * *." R. C. 2111.02 provides for the appointment of such a guardian by the Probate Court. Clearly R. C. 3107.06(C) does not apply to the custodianship held by the Department for Human Resources. In R. C. 3107.06(D), consent is required from "any department, county department or board, certified organization, or a person or persons having the permanent custody of the child." This section is inapplicable with respect to consent from the Department for Human Resources since the Department did not have permanent custody. Thus, we find no basis in R. C. 3107.06 for requiring that the consent of the Department for Human Resources was necessary to the grant of the adoption. The absence of the Department from the hearing resulted in no error.

Appellants next assign as error the court's order of

adoption without the consent of the natural parents. They argue that appellees failed to prove that "one or both of the parents willfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition" as required by R. C. 3107.06(B)(4). There was uncontroverted evidence that appellant Lonnie Walters made some payments to appellees during the two-year period. Nevertheless, the court decided that these payments were in an inadequate amount to support the child. In light of the entire record, we do not believe that the court erred in finding a willful failure to properly support and maintain the child.

Appellants' fifth and final assignment of error is that the court erred to their prejudice in finding that the best interests of the child would be served by the adoption. They assert that the court abused its discretion by not causing an investigation to be made of the natural parents. R. C. 3107.09 requires that the court determine that the best interests of the child will be promoted by the adoption. The statute also directs the court to examine, under oath, other persons in interest who are present. Both Lonnie and Mary Walters (the natural parents) were present and testified at the hearing, and the court had the benefit of this testimony in making the decision. We do not believe that the court erred in its determination.[2] This assignment of error must also fail.

*Judgment affirmed.*

PALMER, P. J., KEEFE and BLACK, JJ., concur.

---

[2] It is appropriate to note that during oral argument in response to inquiries from the bench, counsel for appellants advised the court that they have had no contacts with their clients—the Walters—for "about a year."