[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 602 
On September 7, 1994, Tim and Cherie Burich, former foster parents of Shampail Hitchcock, commenced the above-captioned prohibition action, seeking to prevent the Cuyahoga County Probate Court from holding the finalization hearing in Shampail's adoption, scheduled for 10:30 a.m. on September 7, 1994. *Page 603 Sua sponte, for the following reasons, this court denies the emergency motion for writ of prohibition and dismisses the writ of prohibition.
The Buriches allege that they are white and that the Cuyahoga County Department of Children and Family Services ("the County") has certified them as foster parents for the last five years. On February 26, 1993, the County placed Shampail with the Buriches. Shampail is black and was then only two days old. On July 22, 1993, the County was granted permanent custody of Shampail, and she remained in the Burich home until February 11, 1994. The Buriches allege that on that date the County, under false pretenses, removed Shampail from their home and placed her with the Abdullahs, a black family, for the purpose of allowing the Abdullahs to adopt Shampail.
The Buriches further allege that on February 28, 1994, they commenced an action in federal district court on the grounds that the County violated their constitutional rights by using race as the sole criterion in denying them an opportunity to adopt Shampail. The Buriches concede that the federal court denied immediate relief but assert that the case has not yet been heard on the merits. Their pleading is otherwise silent on what other efforts, if any, they have made to adopt Shampail. Their pleading does not allege that they are parties to Shampail's adoption case, that they have filed a petition to adopt her, that they have moved to intervene in her adoption case, or that they have taken any other action toward adopting Shampail.
They do allege that the juvenile court, in early June 1994, conducted a custody review hearing regarding Shampail. In an order dated June 2 and journalized July 18, 1994, the juvenile court made the Buriches parties to the juvenile court case. The Buriches assert that this was for the purpose of allowing them to raise issues as to the County's conduct during the adoption proceeding, including that the County may have used race as the dominant factor in recommending placement. The judge's order acknowledges that they were foster care providers and that foster parents have no standing. Nevertheless, because the judge perceived some doubt as to that rule of law, he allowed them to become parties and fully participate in Shampail's juvenile court case. This order does not indicate that the Buriches ever had any intentions of adopting Shampail. Finally, the court continued the custody review hearing.
The Buriches next allege that on July 14, 1994, the County and the Abdullahs, in spite of the juvenile court's intention and order, applied to the probate court to finalize the Abdullahs' adoption of Shampail. The probate court set the final adoption hearing for September 7, 1994.
On August 3, 1994, the juvenile court resumed its custody review hearing and issued an entry endeavoring to order the Abdullahs and the County to hold the adoption case in abeyance until "this particular case is resolved and until this *Page 604 
court relinquishes jurisdiction pursuant to statute. It is ordered that any person who violates this order will be held in contempt of this court." The juvenile court then continued its hearing until October 4, 1994.
On September 2, 1994, counsel for the Buriches contacted the probate court and discovered that the finalization hearing was still scheduled for September 7, 1994. On that Wednesday morning, approximately two and a half hours before the scheduled hearing, the Buriches filed this prohibition. The gravamen of the complaint is that because the juvenile court has and intends to exercise continuing jurisdiction over Shampail's custody, the probate court may not exercise its jurisdiction over Shampail's adoption. The Buriches also argue that prohibition is warranted because the County and the Abdullahs apparently are seeking the adoption finalization hearing in disobedience to the juvenile court's order and because a completed adoption would moot the serious issues before the juvenile court. Although the Buriches do not specify how they would be harmed, they claim irreparable injury if the adoption is finalized because the adoption would be almost impossible to overturn. These arguments are unpersuasive.
First, pursuant to Loc.R. 1(B), the Rules of Civil Procedure govern in original actions before this court. Civ.R. 10(A) requires that "the title of the action shall include the names and addresses of all the parties." However, the relators caption this prohibition "In re: the Adoption of Shampail Hitchcock"; they do not identify themselves as the relators, nor do they identify the respondent. Is the respondent Judge John Donnelly, Judge John E. Corrigan or the Probate Court of Cuyahoga County? Moreover, an examination of the Certificate of Service reveals that although the County, Shampail's guardian ad litem,
Shampail's attorney and the attorney for the Abdullahs are served, there is no mention of the probate court or any judge thereon. Thus, the complaint is defective for not identifying the proper parties before this court.
More important, however, the continuing jurisdiction of the juvenile court does not present a jurisdictional bar to adoption proceedings in the probate court. R.C. Chapter 3107 vests exclusive jurisdiction over adoption proceedings in the probate court. In re Adoption of Biddle (1958), 168 Ohio St. 209, 6 O.O.2d 4, 152 N.E.2d 105. If a court has exclusive jurisdiction over a proceeding, it is difficult to imagine how another court may divest it of the authority to hear such a proceeding.
Furthermore, an examination of other statutory provisions confirm that proceedings in the juvenile court do not divest the probate court of jurisdiction over adoptions. The Buriches cite R.C. 2151.353(E)(1) to establish that the juvenile court retains jurisdiction over any child for whom the court issues an order of disposition. The Buriches quote that portion of the subsection which *Page 605 
provides that the juvenile court retains jurisdiction until the child reaches the age of eighteen. However, the subsection further provides, inter alia, that the juvenile court retains jurisdiction until "the child is adopted and a final decree of adoption is issued * * *." Through this provision the legislature manifested its intention for the probate court to exercise its jurisdiction in adoption proceedings while the juvenile court exercises its continuing jurisdiction over custody. If this were not the case, then the following anomalous situation would exist: a juvenile court having continuing jurisdiction over custody of an abused, neglected or dependent child but having no jurisdiction to hear an adoption proceeding for that child, and a probate court having exclusive jurisdiction over adoption proceedings but being unable to exercise it for the subject child because of the continuing jurisdiction of the juvenile court. This would make it impossible for an abused, neglected or dependent child to be legally adopted. Such an interpretation must be rejected. Cf. Biddle, 168 Ohio St. at 214-215, 6 O.O.2d at 7-8, 152 N.E.2d at 109-110, and Syversten v. Carrelli (1979),67 Ohio App.2d 105, 21 O.O.3d 418, 425 N.E.2d 930.
Similarly, R.C. 3107.11 specifies the persons who must receive notice in adoption proceedings. Subsection (A)(2) requires that notice be given to "[a]ny court, agency, or person whose consent to the adoption is required by this chapter but who has not consented." This provision also envisions a probate court hearing adoptions for children who are within the continuing jurisdiction of another court, e.g., juvenile court. Furthermore, the provision envisions situations in which the court having custody of the child may not agree with a specific adoption; nonetheless, the probate court has the authority to continue the adoption proceeding.
The statutory history of Ohio's adoption law is also illuminating. R.C. 3107.06(D) used to provide: "No final decree or interlocutory order of adoption shall be entered with respect to any child in the custody of the Juvenile Court, or concerning whose custody or disposition proceedings are pending in the court, until the custody or proceedings have been suspended or terminated by the court." That provision has been repealed. R.C.3107.06(D) now provides that an adoption may be granted only if written consent to the adoption has been executed by certain persons, agencies or courts, including "[t]he juvenile court that has jurisdiction to determine custody of the minor, if the legal guardian or custodian of the minor is not authorized by law or court order to consent to the adoption." There are at least two important features to this amendment. First, the power of the juvenile court is now conditional. The juvenile court becomes involved only if the custodian or legal guardian does not already have the power to consent to the adoption. Second, the authority of the juvenile court is no longer arguably jurisdictional. By previously requiring the juvenile court to *Page 606 
suspend or terminate its case, the legislature was apparently balancing jurisdiction between the two courts. By eliminating the requirement that the juvenile court must suspend or terminate its case before the probate court can conclude an adoption, the legislature removed the jurisdictional language and hence the jurisdictional bar of the juvenile court over adoption proceedings. In certain cases the consent of the juvenile court may be required, but that requirement now concerns the substantive law of adoption rather than the basic authority of the probate court to hear adoption cases.
Furthermore, an examination of the common law confirms that the probate court may grant adoptions despite the continuing jurisdiction of other courts over the subject child. The most analogous case to the action sub judice is In re Adoption ofRidenour (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055. In Ridenour
the juvenile court granted Fairfield County permanent custody of two minor children, who were placed with the Ridenours. However, the juvenile court granted the grandparents post-adoption visitation rights. In essence the juvenile court exercised its continuing jurisdiction to place conditions on the probate court. The Ohio Supreme Court rejected the juvenile court's power to make such an order as "an unauthorized infringement on the jurisdiction and judicial discretion of the probate court."61 Ohio St. 3d at 324, 574 N.E.2d at 1060. The high court reasoned that under Ohio law the probate court has exclusive jurisdiction over adoption proceedings and "is empowered by the legislature to reach adoption decisions on the basis of the best interests of the child at the time the petition is filed. If the probate court is bound by a prior order from another court, then the probate court may be forced to sacrifice the best interests of the child in order to protect the rights accorded to third parties." Id. Thus, the Ohio Supreme Court ruled that the continuing jurisdiction of the juvenile court presents no bars or limitations on the jurisdiction or authority of the probate court.
Similarly, in Biddle the Ohio Supreme Court held: "A Probate Court has jurisdiction to hear and determine an adoption proceeding relating to a minor child notwithstanding the fact that the custody of such child is at the time within the continuing jurisdiction of a divorce court." Id.,168 Ohio St. at 209, 6 O.O.2d at 4, 152 N.E.2d at 106, paragraph two of the syllabus. In this case the mother and father of the child were divorced, and the divorce court awarded custody of the child to the mother. The mother went to live with her parents, who really took care of the child. When the relationship between the mother and the grandparents became strained, the mother left without her child and married another man. The grandparents brought an adoption action for their grandchild, and the mother brought a habeas corpus action to regain her child. In ruling between these two courts, the Ohio Supreme Court concluded that it would be an *Page 607 
impossible anomaly for the probate court to have exclusive jurisdiction over adoption matters, but not be able to exercise such power because of the continuing jurisdiction of another court.
This court reached the same conclusion in Syversten v.Carrelli (1979), 67 Ohio App.2d 105, 21 O.O.3d 418,425 N.E.2d 930. In this case the domestic relations court had granted a divorce and awarded the custody of the minor child to one of the parents. Years later the mother, who had custody, remarried and the stepfather sought to adopt the child. The biological father opposed the adoption on the ground that the domestic relations court had continuing jurisdiction, which prevented the probate court from hearing the matter. This court ruled: "The continuing jurisdiction in a divorce action of the Court of Common Pleas, Domestic Relations Division, to determine the custody of a minor child does not deprive the Court of Common Pleas, Probate Division, of jurisdiction in adoption proceedings relating to that child." 67 Ohio App.2d at 106-107, 21 O.O.3d at 419,425 N.E.2d at 931.
In State ex rel. Portage Cty. Welfare Dept. v. Summers
(1974), 38 Ohio St.2d 144, 67 O.O.2d 151, 311 N.E.2d 6, Portage County placed a child born out of wedlock with the Hannas very shortly after birth. When the County removed the child after several years, in part because of the issue of race, the Hannas petitioned the probate court to adopt the child. Portage County refused its consent, which R.C. 3107.06(D) required before the adoption could be finalized.[1] Nevertheless, the probate court ruled that it would allow the Hannas to adopt the child. Before the final entry could be drafted and journalized, Portage County commenced a prohibition action to prevent the probate court from entering such an order on the grounds that the County's consent was jurisdictional. The Ohio Supreme Court rejected that argument, holding that the refusal of consent under R.C. 3107.06 does not impair the jurisdiction of the probate court. Summers, paragraph four of the syllabus. See, also, In re Haun (1971), 31 Ohio Misc. 9, 58 O.O.2d 336,277 N.E.2d 258, affirmed 31 Ohio App.2d 63, 60 O.O.2d 163,286 N.E.2d 478.
Currently, the juvenile court's consent to an adoption is required under R.C. 3107.06(D), if it has jurisdiction over the child and if the child's guardian is not authorized to give consent. Although a distinction may be drawn between a court's power and an agency's power, the fact that the juvenile court's involvement is conditioned upon the guardian not having authorization to make the *Page 608 
consent indicates that the juvenile court's power and involvement in an adoption should be no greater than a guardian's or agency's. Therefore, because the refusal of a guardian or agency to give consent to an adoption is not a jurisdictional bar, the current version of R.C. 3107.06(D) should not be read as creating a jurisdictional bar over the probate court's authority in adoptions.
In In re Adoption of McDermitt (1980), 63 Ohio St.2d 301, 17 O.O.3d 195, 408 N.E.2d 680, the Ohio Supreme Court held that an Ohio probate court had jurisdiction to grant an adoption despite the continuing jurisdiction of a Kentucky circuit court. The Court of Appeals for Hamilton County similarly ruled that the continuing jurisdiction of a Kentucky juvenile court does not bar the issuance of an adoption by an Ohio probate court. In reJohnson (1978), 56 Ohio App.2d 265, 10 O.O.3d 278,382 N.E.2d 1176.
Moreover, to the extent that the Buriches are arguing that the rule of concurrent jurisdiction[2] precludes the probate court from acquiring jurisdiction, this argument is not persuasive. The operation of that rule is conditioned upon the claims or causes of action being the same in both cases.State ex rel. Judson v. Spahr (1987), 33 Ohio St.3d 111,515 N.E.2d 911. An adoption case is very different from a claim that a child is abused, neglected or dependent.[3]
The requisites for prohibition are well established: (1) the court or officer against whom it is sought is about to exercise judicial or quasi-judicial power, (2) the exercise of such power must be unauthorized by law and (3) the relator has no other adequate remedy at law. Judson, 33 Ohio St.3d at 112,515 N.E.2d at 912. In the present case the second element is not fulfilled, because probate court has exclusive authority to hear and determine adoption cases and because the continuing jurisdiction of juvenile court does not present a jurisdictional bar to the proceedings in probate court. Therefore, prohibition does not lie in the present case.
In addition, there are several other doubtful aspects to this prohibition action: standing and timeliness. In State ex rel.Matasy v. Morley (1986), *Page 609 25 Ohio St.3d 22, 23, 25 OBR 18, 19, 494 N.E.2d 1146, 1147, the Ohio Supreme Court enunciated the criteria for standing: "a prohibition action may only be commenced by a person who is either a party to the proceeding sought to be prohibited * * * or demonstrates an injury in fact to a legally protected interest." There is no evidence or even allegation that the Buriches are parties before the probate court or even that they tried to become parties before that court. Thus, they do not qualify under the first prong of the test.
Under the second prong the Buriches' allegations are insufficient to indicate a legally protected interest. The Buriches are former foster parents. Under Ridenour and its progeny biological grandparents do not have standing in adoption proceedings; former foster care providers have no inherent legally protected interest to object to an adoption. In the juvenile court case the trial judge in his order expressed serious reservations about the standing of the Buriches to participate in that action. The thrust of the Buriches' prohibition complaint is not so much that they are being deprived of the opportunity to adopt Shampail, but that they wish to preserve serious issues for the juvenile court's consideration. Furthermore, the complaint fails to allege that they have sought to intervene in the adoption proceeding or that they have tried to file a petition to adopt Shampail in the probate court. Nor do they plead that they want to adopt Shampail now. Accordingly, it is hard to recognize how former foster parents who are not parties to the adoption proceeding have standing to prohibit the probate court from proceeding with the adoption.
The dilatory filing of the complaint also concerns the court. The order of the juvenile court endeavoring to stop the adoption proceedings was written on August 3, 1994, and journalized on August 9. Nevertheless, the complaint indicates that the relators and their attorneys waited approximately a month, until just before the adoption finalization hearing to determine whether the adoption was going forward. Then the complaint in prohibition was filed a mere two and a half hours before the adoption hearing was to commence. The courts have dismissed writs of prohibition for lack of diligence. State ex rel.O'Grady v. Brown (1976), 48 Ohio St.2d 17, 2 O.O.3d 94,356 N.E.2d 296; State ex rel. Weldon v. Franklin Cty. Bd. ofElections (1964), 176 Ohio St. 92, 26 O.O.2d 438,197 N.E.2d 802; State ex rel. Krupa v. Green (1961), 114 Ohio App. 497, 19 O.O.2d 341, 177 N.E.2d 616. These were election cases, which have peculiar time pressures. Similarly, adoptions also have time pressures. A child is ill-served by legal maneuverings which delay his or her final disposition. This court is also ill-served by being confronted with last-minute pleadings intended to interfere with the authority of other courts. In some cases such late filing may be unavoidable, but in the present case the record indicates that the relators could have and should have moved with more diligence. Nothing prevented the relators from *Page 610 
checking the status of the adoption proceedings in the middle of August. Instead they appear to have waited approximately four weeks. Nothing prevented them from filing the prohibition earlier. Such a course of action probably would have minimized disruption and tension in Shampail's life and allowed a more orderly course of proceedings for all courts.
It is a well-established rule of law that a "writ of prohibition is a high prerogative writ to be used with great caution and only in the furtherance of justice and its allowance or disallowance lies within the discretion of the court * * *."State ex rel. Krupa v. Green, supra, 114 Ohio App. at 500, 19 O.O.2d at 343, 177 N.E.2d at 618; State ex rel. Gilligan v.Hoddinott (1973), 36 Ohio St.2d 127, 65 O.O.2d 310,304 N.E.2d 382. Other courts have held that extraordinary writs should not issue in doubtful cases. State ex rel. Goldsberry v. Weir
(1978), 60 Ohio App.2d 149, 14 O.O.3d 114, 395 N.E.2d 901;State ex rel. Shafer v. Ohio Turnpike Comm. (1953), 159 Ohio St. 581, 50 O.O. 465, 113 N.E.2d 14; State ex rel. Connole v.Cleveland Bd. of Edn. (1993), 87 Ohio App.3d 43, 621 N.E.2d 850. In the present case the court has doubts concerning the standing of the relators to bring this prohibition action and the dilatory filing of the case. Accordingly, in the exercise of its discretion the court dismisses this prohibition on the additional grounds that the relators do not have standing and that the case was filed in a dilatory manner.
The application for a writ of prohibition is dismissed and the motion for emergency writ of prohibition is denied. Relators to pay costs.
Judgment accordingly.
JAMES D. SWEENEY and DAVID T. MATIA, JJ., concur.
[1] At the time of this case R.C. 3107.06(D) required the concent of any department, county department or board, certified organization, or a person or persons having the permanent custody of the child. The requirement is now embodied in R.C. 3107.66(C). Thus, the literal holding of Summers reguarding subjection (D) would not necessarily bind the juvenile court, which is not mentioned in that subjection.
[2] Between courts of concurrent jurisdiction, the one whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exculsion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.John Weenink Sons Co. v. Court of Common Pleas (1948),150 Ohio St. 349, 38 O.O. 189, 82 N.E.2d 730.
[3] The issue of whether invoking the jurisdiction of the probate court for adoption of a subject child terminates the authority of the juvenile court over that child is not presented in this prohibition action, and this court does not determine that issue. This court does note, however, that the Court of Appeals for Hamilton County has held that the invocation of probate court jurisdiction terminates the jurisdiction of the juvenile court. In re Moran (Apr 13, 1994), Hamilton App. Nos. C-920904, C-920944, C-920945, C-920947, C-920948, C-920949, and C-920950, unreported, 1994 WL 123683.