DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Stephanie B. ("Mother") has appealed from a decision of the Summit County Court of Common Pleas, Juvenile Division. This Court affirms.
 I. {¶ 2} On September 13, 2006, A Child's Waiting Foster Care and Adoption Program, a private child placing agency, notified the juvenile court, pursuant to R.C. 5103.15(B)(2), that E.B., born April 17, 2006, had been voluntarily surrendered by Mother. On the same day and pursuant to the same statute, the agency also notified the juvenile court that the child had been placed *Page 2 
for adoption. Both notifications were journalized as required by R.C.5103.15(B)(2).
 {¶ 3} On April 23, 2007, Mother filed a motion for relief from judgment. In that document, Mother asked the juvenile court to vacate its September 13, 2006 "acceptance" of her consent to the adoption of her child, claiming that her signature on the permanent surrender form (JFS Form 01666 Permanent Surrender of Child) was not voluntary, but, rather, was the result of duress and misrepresentations.
 {¶ 4} On May 3, 2007, the agency opposed the request for relief from judgment and asserted that the motion should be denied because juvenile court approval of the permanent surrender agreement is not required in this case, and also because the juvenile court had, in fact, issued no order or judgment from which relief could be granted. In the alternative, the agency requested a stay of proceedings in the juvenile court until the probate court issued a ruling regarding matters heard in that court on March 9, 2007.
 {¶ 5} On May 22, 2007, the juvenile court issued an order finding that R.C. 5103.15(B)(2) does not require it to approve the permanent surrender agreement in this case; the agreement need only be entered upon the court's journal. In light of Mother's allegations of duress, however, the juvenile court indicated that it would construe Mother's Motion for Relief from Judgment as a Motion to Set Aside the Agreement and ordered a hearing to be held on the *Page 3 
validity of her consent. The court also enjoined the agency from consenting to the adoption in the interim.
 {¶ 6} On May 29, 2007, the agency objected to the Motion to Set Aside the Agreement and also sought a dismissal of the action for lack of jurisdiction because the issue of duress was already before the probate court.
 {¶ 7} Thereafter, on July 16, 2007, the juvenile court vacated its decision of May 22, 2007 for lack of jurisdiction and denied Mother's Motion to Set Aside because no order had been filed by the juvenile court. Mother timely appealed and assigned two errors for review. Because the two assignments of error are related, they will be addressed together.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN NOT ALLOWING THE PETITIONER TO WITHDRAW HER CONSENT TO THE ADOPTION OF HER DAUGHTER."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN FINDING THAT IT LACKED JURISDICTION TO HEAR [MOTHER'S] CHALLENGE TO THE VALIDITY OF HER CONSENT TO THE ADOPTION OF HER DAUGHTER."
 {¶ 8} Through her two assignments of error, Mother contends that the trial court erred in not allowing her to withdraw her consent to the adoption of her daughter and that the trial court erred in finding that it lacked jurisdiction to hear *Page 4 
Mother's challenge to the validity of that consent. This Court finds no merit in either assignment of error.
 {¶ 9} Inasmuch as Mother was only seventeen years of age at the time of the surrender, we note that the Ohio Supreme Court has held that the validity of a permanent surrender contract executed by a minor parent is not affected by the parent's minority. Kozak v. Lutheran Children's AidSociety (1955), 164 Ohio St. 335, 343. See, also, R.C. 5103.15(D).
 {¶ 10} In support of the contention that she should be able to withdraw her consent, Mother asserts that the juvenile court abused its discretion when it vacated its order which set the matter for hearing. The basis of her argument is that the agency's May 29, 2007 filing ("Combined Objection to Motion to Set Aside Agreement and Motion to Dismiss for Lack of Jurisdiction") will not support the court's decision, i.e., the vacation of its previous order. She claims the agency's motion cannot be treated as either a motion for reconsideration because "a motion for reconsideration is a nullity" or a motion for relief from judgment because the motion did not satisfy the requirements of Civ.R. 60(B). For the following reasons, this Court concludes that the trial court's previous order was, in fact, subject to reconsideration and that the juvenile court did not abuse its discretion in vacating that order.
 {¶ 11} Mother has cited Pitts v. Ohio Dept. of Transp. (1981),67 Ohio St.2d 378 for the proposition that a motion for reconsideration is a nullity under *Page 5 
the Ohio Rules of Civil Procedure. In Pitts, the Ohio Supreme Court did state that final judgments are not subject to motions for reconsideration, but the Court also acknowledged that interlocutory orders are subject to motions for reconsideration at any time before the entry of final judgment in the case, either upon the court's own motion or upon the motion of a party. Id. at 379, fn. 1. See, also,Mahlerwein v. Mahlerwein, 160 Ohio App.3d 564, 2005-Ohio-1835, at ¶ 20.
 {¶ 12} The juvenile court order granting a hearing was interlocutory and not a final appealable order. A portion of the agency's filing was in the nature of a motion for reconsideration, but, in any event, the trial court was also entitled to reconsider its own interlocutory decision prior to issuing a final order in the case. Pitts,67 Ohio St.2d at 379, fn. 1. This Court concludes that the juvenile court was entitled to reconsider its prior decision and did not abuse its discretion when it vacated its previous order for a hearing.
 {¶ 13} Next, Mother argues that the juvenile court erred in finding that it lacked jurisdiction to hear her challenge to the validity of her consent to the adoption of her daughter. In her supporting argument, Mother cites R.C. 5103.15(B) as requiring juvenile court approval when a parent enters into an agreement surrendering a child into the permanent custody of a public children services agency. Mother has failed to address the fact that her agreement was made with a private child placing agency, however, and not a public children services agency. *Page 6 
 {¶ 14} Ohio's adoption statutes are in derogation of the common law and must be strictly construed. Lemley v. Kaiser (1983),6 Ohio St.3d 258, paragraph one of the syllabus. Although R.C. 5103.15 is not part and parcel of the adoption statutes, to the extent that it is, in substance, an adoption statute, it is in derogation of the common law and requires strict compliance. See Lemley, 6 Ohio St. at 260. (finding that R.C. 5103.16, regarding the placement of a child surrendered for adoption, is, in substance, an adoption statute and strict compliance is required).
 {¶ 15} A careful reading of R.C. 5103.15 reveals that the juvenile court was not required to approve — or do anything more than merely journalize — the notification documents which were filed in the juvenile court by the agency. R.C. 5103.15(B)(1) sets forth the general rule that public and private agencies seeking permanent custody of a child "shall file a request with the juvenile court * * * for approval of the agency's permanent surrender agreement[, ]" but the same section also specifically exempts matters coming within R.C. 5103.15(B)(2). R.C.5103.15(B)(2) provides that juvenile court approval is not required for a permanent surrender agreement between parents of a child less than six months of age and a private child placing agency where the agreement has been executed solely for the purpose of obtaining the adoption of the child. See R.C. 5103.15(B)(1) and (2). R.C. 5103.15(B)(2) provides as follows:
 "The parents of a child less than six months of age may enter into an agreement with a private child placing agency surrendering the child into the permanent custody of the agency without juvenile court approval if the agreement is executed solely for the purpose of *Page 7 
obtaining the adoption of the child. The agency shall, not later than two business days after entering into the agreement, notify the juvenile court. The agency also shall notify the court not later than two business days after the agency places the child for adoption. The court shall journalize the notices it receives under division (B)(2) of this section."
Accord Juv.R. 38(B)(2) and Ohio Admin. Code Section 5101:2-42-09(F).
 {¶ 16} A review of the historical modifications to R.C. 5103.15 sheds some light on this matter. In 1955, the Ohio Supreme Court was faced with a habeas corpus action brought by biological parents seeking to withdraw their consent to the permanent surrender of their child to a private agency. Kozak, supra. The version of R.C. 5103.15 which existed at that time did not require approval of any such agreements by the juvenile court. Id. at 340. When faced with the parents' argument that, because a consent to adoption may be withdrawn before an order is issued by the probate court, a consent to permanent custody may likewise be withdrawn before such an order is issued, the Supreme Court responded: "The succinct and complete answer to that contention is that Section3107.06, Revised Code, recognizes the right of withdrawal of consent, whereas Section 5103.15, Revised Code, does not." Kozak,164 Ohio St. at 342. In other words, the probate statute recognizes the right of withdrawal of consent, whereas the juvenile statute does not.
 {¶ 17} R.C. 5103.15 has been modified over the years, gradually extending the protection of juvenile court approval to more and more permanent surrender agreements. Prior to January 1, 1989, R.C. 5103.15
required juvenile court *Page 8 
approval of transfers of permanent custody to a public agency while private state-certified adoption agencies were still permitted to secure parental consent to a permanent surrender of child custody without court approval. McGinty v. Jewish Children's Bureau (1989), 46 Ohio St.3d 159,161. After that date, court approval was required for both public and private permanent surrenders of custody, except when a child less than six months old was being surrendered to a private agency. Id.
 {¶ 18} In 1989, this Court addressed some of the changes to this statute and the then-existing disparity between the statutory requirements for adoption by private placement and by permanent surrender to a public agency. McGinty v. McGinty (Apr. 26, 1989), 9th Dist. No. 13926. In considering an equal protection argument to these changes, we relied on our own decision in In the Matter of the PermanentSurrender of Jason Duane Butler (May 5, 1982), 9th Dist. No. 1780, where we stated:
 "* * * A parent seeking to surrender a child for adoption has a choice of whether to proceed through a public or a private agency. The statutes of which appellant complains set up different procedures based on which agency is chosen, not based on any classification of the parent. * * * Appellant elected her procedure, and once embarked upon that course was treated no differently than any other similarly situated individual. * * *."
 {¶ 19} Similarly, the parent in the present action elected to surrender her five-month-old child to a private child placing agency solely for the purpose of obtaining the adoption of the child. The current version of R.C. 5103.15 does not *Page 9 
extend the protection of juvenile court approval to those who elect to so proceed. These individuals are in a position comparable to that which existed for individuals permanently surrendering children in 1955 when the Kozak court found, in effect, that the probate statute recognized the right of withdrawal of consent, whereas the juvenile statute did not.
 {¶ 20} In the present case, the agency was not statutorily required to seek juvenile court approval and did not do so. In turn, the juvenile court was only obligated to journalize the notices it received from the agency pursuant to R.C. 5103.15(B)(2), and was not further obligated to take any action in regard to the surrender agreement. Consequently, this Court is led to conclude that the juvenile statute, when strictly construed, does not recognize the right of withdrawal of consent by a parent of a child less than six months old where permanent surrender has been made to a private agency solely for the purpose of adoption.
 {¶ 21} Mother next argues that even though the probate court had jurisdiction of the adoption proceedings and had heard evidence on the issue of Mother's consent, the juvenile court should still have considered a challenge to the validity of the surrender agreement.
 {¶ 22} Mother cites In re Miller (1980), 61 Ohio St.2d 184 andState ex rel. Hitchcock v. Cuyahoga Cty. Court of Common Pleas, ProbateDiv. (1994), 97 Ohio App.3d 600, 604 in support of her position that the juvenile court should have considered a challenge to the validity of Mother's surrender agreement. This *Page 10 
Court finds neither case to be dispositive of the present matter.Miller indicates that, in that case, the juvenile court had jurisdiction to entertain a motion to vacate its consent to a permanent surrender agreement. Miller, 61 Ohio St.2d at 189. In Miller, however, the agreement was with a public agency and the juvenile court was statutorily required to take action in regard to the agreement. As a result, there was a juvenile court order consenting to the agreement; whereas, in the present case, there is no order approving the surrender agreement and none is statutorily required. Consequently, without a court order indicating approval or consent, there is nothing to be vacated, considered, or reconsidered by the juvenile court as there was in Miller.
 {¶ 23} Mother also cites Hitchcock in an apparent effort to suggest that the juvenile court may act upon Mother's request to challenge the validity of her consent to adoption even though the probate court has jurisdiction over the pending adoption proceedings. Hitchcock held that "the continuing jurisdiction of the juvenile court does not present a jurisdictional bar to adoption proceedings in the probate court."Hitchcock, 97 Ohio App.3d at 604. The court further explained that the legislature has expressed its intent "for the probate court to exercise its jurisdiction in adoption proceedings while the juvenile court exercises its continuing jurisdiction over custody." Id. at 605.
 {¶ 24} The fact that the juvenile court retains continuing jurisdiction in some matters is not to say that the juvenile court may or is required to address the *Page 11 
specific matter that Mother has requested here. Hitchcock was brought on a writ of prohibition and involved a challenge by one set of foster parents, attempting to prevent the probate court from holding a finalization hearing in the adoption of the child by subsequent foster parents where the custody of the child was at issue before the juvenile court. Id. at 602-603. That case did not concern a surrender agreement or the question of the validity of a biological parent's consent to adoption, and it does not lend any support to Mother's claim that the juvenile court erred in finding that the question of the validity of the surrender agreement was properly for the probate court. See, also,In re A.H., 9th Dist. No. 22984, 2006-Ohio-3285, at ¶ 18 (finding that the juvenile court was justified in refusing to delve into the identical issue that was already being litigated in the probate court).
 {¶ 25} It is important to note that jurisdiction over adoption proceedings in Ohio is vested originally and exclusively in the probate court. In re Adoption of Pushcar (2006), 110 Ohio St.3d 332, 333-334
citing State ex rel. Portage County Welfare Dept. v. Summers (1974),38 Ohio St.2d 144, paragraph two of the syllabus. This is true notwithstanding the fact that the juvenile court will retain the ability to conduct a review hearing following a voluntary permanent surrender where a final decree has not been issued or where an adoptive placement has not been made within a specified period of time, see R.C. 5103.153, or the fact that the juvenile court will have continuing jurisdiction in other cases. See, e.g., In re A.H., 2006-Ohio-3285, at ¶ 22. *Page 12 
 {¶ 26} Ohio law has established that a valid consent is a jurisdictional prerequisite to the issuance of an adoption order by a probate court. In re Adoption of Zschach (1996), 75 Ohio St.3d 648, 657. Moreover, a valid consent is one that is not the product of duress or undue influence. Id. Ohio courts have also indicated that, although a signed consent agreement is prima facie evidence of a valid consent, that consent may be invalidated by the presentation of clear and convincing evidence of duress, fraud or other consent-vitiating factors.In re Adoption of Yurick (Dec. 15, 1999), 9th Dist. No. 19520. See, also, Morrow v. Family Community Serv. of Catholic Charities,Inc. (1986), 28 Ohio St.3d 247, 251. Whether the challenge is considered a collateral attack upon the probate court's jurisdiction,Zschach, 75 Ohio St.3d at 658, or a direct attack on the validity of the consent itself, id. at 663, Resnick, J., concurring, the Ohio Supreme Court has recognized such challenges "up to one year after the adoption for a challenge to the legal validity of a consent." In re Adoption ofZschach (1996), 75 Ohio St.3d 648, 658. Upon proper evidence being presented to the probate court, establishing that consent was not voluntary, the consent will be rendered invalid and the adoption decree will be void. Zschach (1996), 75 Ohio St.3d at 657.
 {¶ 27} Accordingly, the juvenile court did not err in finding that consideration of this matter properly lies with the probate court. Mother has failed to demonstrate error, and the second assignment of error is overruled. Mother's two assignments of error are overruled. *Page 13 
 III. {¶ 28} Mother's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARLA MOORE FOR THE COURT *Page 14 
MOORE, J. BAIRD, J. CONCURS