OPINION
Appellant Jay Vann contests the judgment by the Cuyahoga County Juvenile Court awarding permanent custody of Baby Girl Alberts, aka Jayde Frances Vann, to the appellee Cuyahoga County Department of Children and Family Services (hereafter "CCDCFS"). Vann contends that the judgment is against the manifest weight of the evidence. We find Vann's contention is not well taken. Accordingly, we affirm the judgment.
The child was born on July 26, 1998. Her mother was identified as Sheryl Alberts and her father was alleged to be Vann. On July 27, 1998, CCDCFS filed a complaint for dependency and permanent custody of the child. CCDCFS simultaneously sought pre-dispositional temporary custody. CCDCFS alleged that the child's parents had drug abuse problems that prevented them from providing adequate care and support for the child.
In particular, CCDCFS alleged that the mother was examined at a hospital on June 30, 1998, after Vann punched her in the stomach because she would not give him money to purchase crack cocaine. On that date, the mother tested positive for cocaine, amphetamines and propoxyphene. CCDCFS further alleged that the mother had four other children who were not in her care, one of whom was in the temporary custody of CCDCFS because of the mother's inability to provide care for the child, her lack of housing, and domestic violence between the mother and that child's father. CCDCFS's complaint added that the mother had not followed through with the services ordered in the case plan, including drug and alcohol assessment, mental health services, and stable housing, and that the mother continued to abuse drugs. CCDCFS's complaint further reported that the mother and Vann were living in a boarded up home without the owner's permission and without any utilities. Vann was alleged to have a criminal history of drug related crime and assault. CCDCFS averred that the mother had failed to remedy the problems that caused the removal of the older child from the home and that Baby Girl Alberts was in need of a legally secure placement.
On July 27, 1998, a Juvenile court magistrate entered an exparte order authorizing CCDCFS to take custody of the child pursuant to R.C. 2151.31. The court scheduled a probable cause hearing for July 29, 1998. On that date, finding probable cause to believe that the child would be in immediate danger from her surroundings if she were placed with the mother, the court continued the matter until August 19, 1998.
The record reflects that hearings were conducted on August 19, 1998; September 17, 1998; and October 19, 1998. The record further reflects that the August 19, 1998 hearing was the last hearing Vann attended.[1]
On October 19, 1998, the court held an abbreviated hearing on CCDCFS's request for permanent custody. Vann failed to appear but the mother, Sheryl Alberts, did attend. The mother admitted that the allegations in the complaint and related affidavit were true. The social worker who made those allegations likewise confirmed their truth at the hearing. The infant's guardian ad litem
recommended that CCDCFS be awarded permanent custody.
On November 25, 1998, the court granted CCDCFS permanent custody of the child. Appealing, Vann, along with counsel appointed for the appeal, presents one assignment of error:
 THE LOWER COURT'S DECISION GRANTING PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.
This assignment of error is not well taken.
R.C. 2151.41.4(B) provides, in relevant part:
 The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents * * *.
The primary and overriding concern in any child custody case is to reach a disposition that is in the child's best interests. SeeIn re Hitchcock (1996), 120 Ohio App.3d 88; In re Awkal (1994),95 Ohio App.3d 309.[2] In determining the best interests of the child, the court is directed by R.C. 2151.41.4(D) to consider all relevant factors, including but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.41.4(E) instructs, in relevant part:
 In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect * * *.
In the case at bar, the lower court found, by clear and convincing evidence, that it was in the best interest of the child to grant permanent custody to CCDCFS; that the child was not abandoned or orphaned; and that the child could not be placed with her parents within a reasonable time or should not be placed with her parents, for these reasons:
 1) The parents have failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside the home;
 2) The parents have failed or refused to provide basic necessities, regular support, visit or communicate with the child when able to do so or by other actions, have shown an unwillingness to provide an adequate permanent home for the child.
The court also found that CCDCFS made reasonable efforts to prevent the removal of the child from the home.
Vann asserts that the trial court's determination is against the manifest weight of the evidence. We cannot agree. Evidence showing the parents' inability to provide safe living conditions may furnish sufficient grounds to find that the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents. See, e.g., In re EgbertChildren (1994), 99 Ohio App.3d 492 (evidence included parents' substance abuse, illegal conduct, inability to care for other children, and inadequate living conditions); In re Meyer (1994),98 Ohio App.3d 189 (evidence showed family residence was extremely filthy, untidy, and hazardous for small children); Inre Shaeffer Children (1993), 85 Ohio App.3d 683 (evidence showed parent failed to timely correct unsafe living conditions); In reGrant (1991), 81 Ohio App.3d 59 (evidence showed parent engaged in illegal activities and substance abuse, missed visits, served three jail terms, exhibited poor impulse control and violent temper, and failed to establish permanent residence).
The record in the instant case convinces us that the trial court's judgment is not against the manifest weight of the evidence. At the October 19, 1998 disposition hearing, the truth of the allegations contained in CCDCFS's complaint for permanent custody was confirmed by CCDCFS's social worker. Sheryl Alberts, the child's mother, independently admitted the truth of those allegations. Vann was not present for this hearing, either personally or by representation. Vann does not identify any irregularity that prevented him from protecting his interest at that proceeding.
The trial court clearly found under R.C. 2151.41.4(B)(1) that it would be in the best interest of the child to grant permanent custody to CCDCFS because the child could not be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. The court could reasonably find that awarding CCDCFS permanent custody was in the best interest of the child in light of the child's need for a legally secure permanent placement, which was unlikely to be achieved without a grant of permanent custody. In addition, the child's guardian ad litem agreed that permanent custody with the CCDCFS was in the child's best interest.[3]
The evidence also supports the lower court's finding that the child could not be placed with either parent within a reasonable period of time or should not be placed with the parents. The court found clear and convincing evidence of one or more of the factors enumerated in R.C. 2151.41.4(E). See In re William S.
(1996), 75 Ohio St.3d 95 (construing former R.C. 2151.41.4). The court could reasonably find under R.C. 2151.41.4(E)(1) that the parents had failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the home, and that the parents failed to take advantage of the restorative services made available to them by CCDCFS.[4] The court could likewise find under R.C. 2151.41.4(E)(4) that the parents had demonstrated a lack of commitment toward the child by failing to provide an adequate permanent home for the child. Since the parents were unlawfully occupying a boarded up structure that lacked utilities, the court could also find under R.C. 2151.41.4(E)(9) that the parents failed to provide for the child's basic necessities. Upon our review of this record, we cannot say that the trial court's judgment is against the manifest weight of the evidence.
We do think Vann's criticism of the cursory manner in which the trial court conducted this permanent custody hearing is fair. CCDCFS's counsel agreed at oral argument that a more through presentation of evidence would have been helpful to better demonstrate the circumstances that justified the request for permanent custody. At the same time, however, the court had before it the uncontested allegations contained in CCDCFS's complaint for permanent custody, the confirming testimony by CCDCFS's social worker, and the admission by the child's mother that those allegations were true.[5] And despite Vann's knowledge of the pendency of these proceedings, he apparently took no steps to attend the October 19, 1998 hearing, either personally or by representative, nor did he take any steps to continue that proceeding. Given the uncontested allegations before the court and the testimony adduced at the dispositional hearing, the court had sufficient grounds to find that an award of permanent custody would be in the child's best interest.
The court's judgment is supported by competent credible evidence, and we are unable to say that the court's judgment is against the manifest weight of the evidence. See Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77; In re Awkal, supra.
Accordingly, we conclude that Vann's assignment of error is not well taken.
The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J., and JAMES D. SWEENEY, J., CONCUR.
 _________________________________ DIANE KARPINSKI PRESIDING JUDGE
[1] The record contains a postjudgment filing by Vann pro se on December 28, 1998, in which he states that he was arrested on September 1, 1998 and had been in jail since the date of his arrest.
[2] According to R.C. 2151.41.4(C), "a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child."
[3] R.C. 2151.41.4(C) requires the child's guardian ad litem to submit a written report, not under oath, prior to or at the time of the hearing. The record before us contains only the guardianad litem's verbal recommendation at the dispositional hearing; we do not see a written submission by the guardian ad litem. Vann does not assign as error, however, the absence of a written submission.
[4] The court's judgment stated that the parents' failure continued "for a period of six months or more * * *." Former R.C. 2151.41.4(E)(1) authorized the court to award permanent custody if "the parent has failed continuously and repeatedly for a periodof six months or more to substantially remedy the conditions causing the child to be placed outside [the] home." (Emphasis added.) See In re Hayes (1997), 79 Ohio St.3d 46; In re Brenna E.
(1997), 124 Ohio App.3d 143. In 1996, R.C. 2151.41.4 was amended and the six-month time requirement under subdivision (E)(1) was deleted.
[5] The mother has not appealed or otherwise challenged the validity of her admission.