**In re HITCHCOCK et al.**

[Cite as *In re Hitchcock* (1996), 120 Ohio App.3d 88.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 69291 and 69292.

Decided Nov. 21, 1996.

92

John H. Lawson, for appellees Abdul and Mary Abdullah et al.

Avery S. Friedman, Gloria Rowland Homolak and Kenneth D. Myers, for appellants Tim and Cherie Burich.

Celestine Suttles and Debra A. Obed, for Cuyahoga County Department of Children & Family Services.

Joanne Canitia Brady, for guardian ad litem.

Toni E. Marsh, for Shampail Hitchcock.

Forbes & Forbes Assoc., George Forbes and Dennis N. Loconti, for N.A.A.C.P.

Steven E. Wolkin, for amicus curiae Advisory Committee of the Juvenile Court Guardian ad Litem Project.

SPELLACY, Chief Judge.

This is a consolidated appeal of appellate case Nos. 69291 and 69292. Tim and Cherie Burich ("appellants") appeal from the order of the juvenile court terminating the Cuyahoga County Department of Children and Family Services' ("CCDCFS") permanent custody of Shampail and Hastings Hitchcock and granting legal custody of the children to Mary and Abdul Abdullah.

Appellants assign the following errors for review:

"I. The trial court erred in allowing the Abdullahs to continue once they were legally ineligible to adopt.

"II. The trial court erred in failing to rule on the Buriches' motion to dismiss the Abdullahs.

"III. The trial court erred in stripping the county welfare agency of permanent custody, granting legal custody to the Abdullahs without giving adequate notice to the parties as to the scope of the hearing and misleading the parties as to the scope of the hearing.

"IV. The trial court erred in not giving the Buriches an opportunity to call witnesses once the scope of the hearing had changed.

"V. The trial court erred as a matter of law in finding dependency.

"VI. Ohio law barring certain felons from adopting or fostering children does not create a right of legal custody where the trial record is incomplete.

"VII. The trial court erred in ordering the children to be removed from pre-adoptive placement of the Buriches absent a finding of abuse or neglect and absent due process.

"VIII: The trial court erred in removing the children from pre-adoptive placement without abiding by the dictates of the Ohio Administrative Code for the removal of children from pre-adoptive placement.

"IX. The trial court erred in relying on a psychological report that was not in evidence and that the parties had not had an opportunity to see and respond to.

"X. The trial court erred by granting a de facto adoption to the Abdullahs, thus unlawfully usurping the exclusive jurisdiction of the probate court to determine adoptions.

"XI. The trial court erred in granting a de facto lifetime legal custody arrangement to the Abdullahs after the court of appeals had stayed the trial court's legal custody order."

I

On February 24, 1993, Shampail Hitchcock was born and tested positive in a cocaine toxicology screen. CCDCFS obtained emergency custody of the infant two days later and placed her in the foster care of appellants. Seven other children, one now deceased, similarly were removed from the care of Sherri and Terry Hitchcock, both of whom have crack cocaine addictions. CCDCFS obtained temporary custody of Shampail on March 9, 1993.

Shampail became available for adoption on July 22, 1993, when she was adjudged to be neglected and permanent custody was granted to CCDCFS. Less than one month later, on August 17, 1993, appellants signed an intent to adopt form. However, CCDCFS decided to place Shampail in the home of Mary and Abdul Abdullah for adoption. The Abdullahs already were the adoptive parents of a biological sister of Shampail. In an attempt to prevent Shampail's removal from their home, appellants filed a notice to intervene in juvenile court on November 8, 1993. They asked for a temporary restraining order to keep Shampail with them. The next day, CCDCFS placed appellants on administrative hold, which prevented any further placements of foster children with appellants. Appellants were unaware of this action until the following May. The trial court dismissed appellants' motion, ruling that they were not parties. On February 11, 1994, Shampail was removed from appellants' home and placed with the Abdullahs.

On February 23, 1994, appellants filed an action in the United States District Court for the Northern District of Ohio. They sought a temporary restraining order and a preliminary injunction claiming they were being unconstitutionally discriminated against, as they were being prevented from adopting an African–American child by CCDCFS because they were Caucasian. The district court denied the motion. That decision was upheld by the United States Court of Appeals for the Sixth District.

On March 5, 1994, Hastings Hitchcock was born and, like his sister Shampail, tested positive at birth for cocaine. Emergency custody was granted to CCDCFS which placed Hastings in the home of Abdul and Mary Abdullah for adoption. On June 29, 1994, the trial court found Hastings to be dependent and neglected, granting permanent custody to CCDCFS.

The juvenile court granted appellants party status on June 2, 1994. The Abdullahs filed a petition for adoption on July 14, 1994. CCDCFS supported the Abdullahs' petition. The probate court scheduled a hearing on the petition for September 7, 1994. However, on August 3, 1994, the trial court ordered that participation by CCDCFS and any prospective parents relative to the adoption proceedings in probate court be stayed and held in abeyance until the case was

resolved in juvenile court. The Abdullahs were granted party status. That order was journalized on August 9, 1994. The hearing was continued until October 4, 1994.

The Abdullahs filed a writ of prohibition with this court to prohibit juvenile court from enforcing its order preventing them from going forward with the adoption proceeding. In *State ex rel. Cuyahoga Cty. Dept. of Children & Family Serv. v. Ferreri* (1994), 96 Ohio App.3d 660, 645 N.E.2d 837, this court dismissed the writ, holding that juvenile court had jurisdiction to hold hearings even though a petition to adopt the child had been filed in probate court.

On September 7, 1994, the day of the Abdullahs' adoption hearing, appellants filed a prohibition action with this court to stop the hearing from being held. In *State ex rel. Hitchcock v. Cuyahoga Cty. Court of Common Pleas, Probate Div.* (1994), 97 Ohio App.3d 600, 647 N.E.2d 208, this court denied the writ holding that the continuing jurisdiction of juvenile court was not a jurisdictional bar to adoption proceedings in probate court. That decision was released on October 12, 1994.

On October 4, 1994, the hearings resumed in juvenile court and continued off and on until July 1995. The protracted hearings were held on over fifty different days. On October 12, 1994, the day the decision of this court was released, the trial court again ordered that none of the parties or agencies involved in this case participate in the proceedings in probate court until the case was completed in juvenile court. CCDCFS then filed its writ of prohibition. This court granted that writ on November 30, 1994. The juvenile court was barred from holding any further custody review hearings for Shampail until after the adoption was finalized in probate court.

On December 1, 1994, counsel for the Abdullahs revealed to the probate court that Abdul Abdullah had been convicted of manslaughter in the 1965 death of his first wife. Abdullah had not revealed this information in the petition to adopt Shampail and Hastings's sister. That adoption was final at the time of this hearing. The probate court held a contested adoption hearing the next day. On December 14, 1994, the probate court dismissed the Abdullahs' adoption petition. Abdul Abdullah was precluded by law from either adopting or fostering any child because of this felony conviction.

CCDCFS supported appellants' adoption petition once the Abdullahs' petition to adopt was dismissed. Hearings continued in the juvenile court relative to the custody of both Shampail and Hastings. The Abdullahs were permitted to intervene.

On December 23, 1994, Shampail and Hastings were placed with appellants. Abdul Abdullah had been ordered to remove himself from the Abdullah home by

the probate court while the children still were present. The Abdullahs filed motions for legal custody of Hastings on December 15, 1994, and for Shampail on January 25, 1995.

The hearing in probate court on appellants' adoption petition was to be held on June 30, 1995. The day before the scheduled hearing, the trial court issued an order vacating the permanent custody of the children and granting the Abdullahs' motion for legal custody. Appellants filed a writ of prohibition against the trial court to prevent the enforcement of the order. This court granted the alternative writ of prohibition and ordered the children into the legal and physical custody of appellants.

On July 13, 1995, the trial court entered an order granting extended visitation rights to the Abdullahs. The extended visitation would end only upon the trial court granting a motion to either modify or terminate the visitation or on the trial court's own motion. The trial court stated that it had exclusive and original jurisdiction to determine custody of the children. That same day, this court granted an alternative writ which prohibited the trial court from exercising any further authority over the cases of Shampail and Hastings or from enforcing the July 13 order.

The next day, the trial court moved to dismiss this prohibition action or in the alternative for summary judgment. This court granted the motion for summary judgment, denied the writ of prohibition and vacated the alternative writ. This court stated the trial court was at least arguably acting within its statutory authority in issuing the order of June 29, 1995. Further, appeal is an adequate remedy at law.

Appellants appealed from the June 29, 1995 order. *Sua sponte,* this court ordered a stay of any and all orders in the cause issued from juvenile court pending the appeal. The enforcement of the trial court's orders of June 29, 1995, and July 13, 1995, were stayed. Permanent custody of the children was to remain with CCDCFS. Appellants retained physical custody of Shampail and Hastings.

II

In their first assignment of error, appellants argue that the trial court erred in allowing the Abdullahs to continue as parties at the hearing once it was discovered that Abdul Abdullah was unable to adopt the children. Appellants filed a motion with the juvenile court to dismiss the Abdullahs because Abdul Abdullah cannot legally be an adoptive or foster parent due to his felony conviction.

Juv.R. 2 includes "any other person specifically designated by the court" as a party. Pursuant to this rule, a juvenile court has wide discretion in affording any individual party status. An abuse of discretion connotes more than an error of law or judgment. It implies the court's attitude was unreasonable, arbitrary, or unconscionable. *In re Jane Doe 1* (1990), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1183–1184.

The Abdullahs were granted party status initially because they were petitioning the probate court to adopt Shampail and Hastings. After their petition was dismissed, the Abdullahs filed a motion in the juvenile court for legal custody of the children even though they were ineligible to adopt. The juvenile court permitted the Abdullahs to continue as parties while it examined the merits of their motion. The best interest of the child is the primary consideration when the disposition of a child is to be determined. *In re Cunningham* (1979), 59 Ohio St.2d 100, 13 O.O.3d 78, 391 N.E.2d 1034. The Abdullahs' motion for legal custody offered the juvenile court another dispositional option for its consideration. The juvenile court did not abuse its discretion by permitting the Abdullahs to remain as parties while their petition and all the other evidence was examined.

Appellants' first assignment of error is overruled.

### III

In their second assignment of error, appellants contend that the trial court erred by failing to rule on their motion to dismiss the Abdullahs as parties. When a trial court fails to rule upon a motion, it will be presumed that the motion was overruled. *Georgeoff v. O'Brien* (1995), 105 Ohio App.3d 373, 663 N.E.2d 1348. It already has been determined that the trial court did not abuse its discretion in permitting the Abdullahs to remain as parties at the hearing. Therefore, there was no error in overruling appellants' motion to dismiss the Abdullahs.

Appellants' second assignment of error lacks merit.

### IV

Appellants' third and fourth assignments of error will be addressed together. Appellants assert that the juvenile court changed the scope of the hearing without giving the parties adequate notice regarding the change. Appellants allege that they were not given any notice of what specific issues they had to address or given an opportunity to present evidence or call witnesses.

Appellants were aware that this was a custody review hearing as that point was reiterated regularly by the trial court. During the many hearings, all

parties were given liberal opportunity to present their various arguments, positions and evidence. Appellants also were aware that whether legal custody should be given to the Abdullahs was an issue, as they opposed that motion. Further, the record shows no effort by appellants to call any member of the Abdullah family as a witness at any point during the lengthy proceedings. To complain for the first time during an appeal that a witness was never called is too late. An appellate court will not consider any error which the complaining party could have called to the court's attention at the time when the alleged error could have been avoided or corrected by the trial court. *In re Pieper Children* (1993), 85 Ohio App.3d 318, 619 N.E.2d 1059. It is the parties' responsibility to present witnesses and evidence to the trial court. Appellants could have called one or more of the Abdullahs to the witness stand but chose not to do so. They cannot raise as error the result of their own choice as to what evidence to present to the trial court.

Appellants' third and fourth assignments of error are not well taken.

## V

In their fifth assignment of error, appellants contend that the trial court erred in finding Shampail and Hastings to be dependent and then removing the children from the Burich home. A review of the record reveals no such finding by the trial court. There was some discussion while the guardian *ad litem* testified as to whether the care the children were receiving from the Buriches constituted dependency, neglect or abuse but the trial court never made any finding of dependency.

Further, the trial court did not need to make a new finding of dependency, abuse or neglect. Shampail already had been adjudicated neglected and Hastings was determined to be both dependent and neglected before the initial disposition of permanent custody was made. Once the original dispositional hearing is held, the juvenile court retains jurisdiction over the child until that child reaches an age of majority or is adopted. R.C. 2151.353(E)(1). The continuing jurisdiction includes holding additional hearings upon the court's own motion or that of any party to reconsider the original order of disposition. R.C. 2151.353(E)(2); R.C. 2151.417(A); and R.C. 2151.417(B). No new finding of dependency is required based upon the circumstances of the current placement of the child before the trial court may consider a motion to modify or change a dispositional order.

Appellants' fifth assignment of error is overruled.

## VI

■ In their eighth assignment of error, appellants maintain that the trial court erred by not following the procedures for removal of children from a pre-adoptive placement found in Ohio Adm. Code 5101:2–48–24. This provision applies only to actions taken by public or private children services agencies. It is not applicable to actions taken by juvenile court.

Appellants' eighth assignment of error is meritless.

## VII

In their ninth assignment of error, appellants contend that the trial court erred in relying on a psychological report about appellant Cherie Burich which was not entered into evidence and which they did not have an opportunity to read or respond to before the trial court's ruling. There is no indication in the record that appellants asked to see the report before, during or after the trial court's opinion of June 29, 1995. Therefore, appellants have waived the assertion of error with regard to the use of the report.

Appellants ninth assignment of error is overruled.

## VIII

Appellants' sixth, seventh, and tenth assignments of error will be addressed together. All concern the trial court's order removing permanent custody from CCDCFS and giving legal custody of Shampail and Hastings to the Abdullahs. Appellants argue that the trial court removed the children from their care because it did not like the placement of the children with their family. The only way to place the children with the Abdullahs was to grant them legal custody as the Abdullahs legally are unable to either adopt or offer foster care. Appellants point out that a disposition of legal custody lacks the permanence of an adoption. Appellants also state that it was for the probate court to decide if they should adopt Hastings and Shampail and that the trial court's order usurped the authority of the probate court which has exclusive jurisdiction over adoption.

■ The issue of appellants' standing to appeal the vacation of the permanent custody order has been raised. CCDCFS had permanent custody of the children but did not appeal the trial court's order terminating permanent custody. "An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." *In re Smith* (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45, 52–53. In another case, a grandmother was found to have standing to appeal even though not made a party when she was allowed to testify at the dispositional hearing and her request to have the children placed with her was considered. *In re Travis Children* (1992),

80 Ohio App.3d 620, 609 N.E.2d 1356. Appellants were made parties and sought to adopt the children. The trial court's order effectively precluded their adoption petition from being heard. Therefore, the rights of the appellants were prejudiced by the trial court's action and they have standing to appeal.

A party seeking the modification of a custody order in juvenile court must prove by clear and convincing evidence that the modification is in the best interest of the child. *In re Patterson* (1984), 16 Ohio App.3d 214, 16 OBR 229, 475 N.E.2d 160. Clear and convincing evidence is that measure or degree of proof which is more than a preponderance of the evidence but which does not require the extent of certainty as does "beyond a reasonable doubt" in a criminal case. It provides in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Hiatt* (1993), 86 Ohio App.3d 716, 725, 621 N.E.2d 1222, 1228. A reviewing court will reverse a judgment of juvenile court only upon a showing of an abuse of discretion. *In re Pieper Children* (1993), 85 Ohio App.3d 318, 330, 619 N.E.2d 1059, 1066–1067.

Keeping the applicable standards in mind, it must be determined whether the trial court abused its discretion by vacating the previous dispositional order of permanent custody and awarding legal custody of Shampail and Hastings to the Abdullahs. Once a child is adjudicated to be abused, neglected, or dependent, the juvenile court may enter any of the dispositional orders found in R.C. 2151.353. Those options are to (1) place the child in protective supervision; (2) commit the child to the temporary custody of a public children services agency, a private child placing agency, a parent, a relative, or a probation officer; (3) award legal custody to a parent or any other person who files a motion requesting legal custody prior to the dispositional hearing; (4) commit the child to the permanent custody of a public children services agency; or (5) place the child in long-term family foster care. The original disposition of the Hitchcock children was to award permanent custody to CCDCFS. After these hearings concluded, the trial court vacated that order and awarded legal custody to the Abdullahs.

There is a significant difference between the two dispositions. R.C. 2151.011(B)(11) defines "permanent custody" as "a legal status which vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parent of any and all parental rights, privileges, and obligations, including all residual rights and obligations." "Legal custody" is defined in R.C. 2151.011(B)(9) as being "a legal status which vests in the custodian the right to have physical care and control of the child and to determine where and with whom he shall live, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsi-

bilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court."

One of the most obvious differences between the two dispositions is that the parent's rights to the child are completely terminated when permanent custody is awarded while residual parental rights remain under legal custody. An order of permanent custody is the most drastic of the dispositions available under R.C. 2151.353. It is considered to be such an extreme disposition that an award of permanent custody is an alternative of last resort justified only when it is necessary for the child's welfare. *In re Cunningham* (1979), 59 Ohio St.2d 100, 105, 13 O.O.3d 78, 81, 391 N.E.2d 1034, 1037–1038.

An essential and basic right of any parent is to raise his or her children. Parents have a fundamental liberty interest in the care, custody and management of their child. *In re Awkal* (1994), 95 Ohio App.3d 309, 315, 642 N.E.2d 424, 428. A parent and child have substantial, protected rights in their family relationship. *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 10, 15 O.O.3d 3, 5–6, 399 N.E.2d 66, 68–69. However, the rights and interests of the natural parents are not absolute. *In re Awkal, supra,* at 315, 642 N.E.2d at 428. The state may permanently terminate parental rights where the parents are unfit. *State ex rel. Heller supra,* at 10, 15 O.O.3d at 5–6, 399 N.E.2d at 68–69. The United States and Ohio Constitutions' guarantees of due process and equal protection require that indigent parents be provided with counsel and a transcript in actions for the permanent, involuntary termination of parental rights. *Id.,* paragraph two of the syllabus. The parties are afforded every procedural and substantive protection allowed by law because the termination of parental rights is the family law equivalent of the death penalty in a criminal case. *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54–55.

These protections are given only where an award of permanent custody is being considered because, under permanent custody, all of the parent's rights to his or her child are terminated. Conversely, under legal custody, the biological parents retain residual rights. These residual rights are:

"[T]hose rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including but not necessarily limited to the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(10).

All rights that the Hitchcocks had to Shampail and Hastings were extinguished when permanent custody was granted to CCDCFS. A hearing held to modify or terminate a dispositional order is held as if it were the original

dispositional hearing. R.C. 2151.353(E)(2). Therefore, the trial court's order vacating permanent custody and giving legal custody of the children to the Abdullahs has resulted in the restoration of the Hitchcocks' residual rights to these children. It is interesting to note that one of those residual rights is the ability to consent to an adoption.

The goal of any disposition of a child is that disposition which is in the best interests of the child. *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 17 OBR 469, 479 N.E.2d 257. This must be the primary and overriding concern in any child custody case. *In re Higby* (1992), 81 Ohio App.3d 466, 611 N.E.2d 403. It is difficult to ascertain how it is in the best interests of the Hitchcock children to be changed from permanent custody to legal custody. The children already were in the dispositional alternative of last resort. The rights of their natural parents were terminated. The purpose of an award of permanent custody is to place the children in adoptive homes. One of the legislative mandates of S.B. No. 89, effective January 1, 1989, was that abused, neglected and dependent children are entitled to stable, secure, nurturing and permanent homes. See *In re Awkal, supra*. This court stated in *State ex rel. Hitchcock v. Cuyahoga Cty. Court of Common Pleas, Probate Div.* (1994), 97 Ohio App.3d 600, 609, 647 N.E.2d 208, 214, that "a child is ill-served by legal maneuverings which delay his or her final disposition." The trial court's order deprives Hastings and Shampail of any possibility of having a permanent home. It has the effect of rendering the term "permanent custody" to be an oxymoron as any permanency becomes a transient concept which can appear or disappear and perhaps reappear depending on the trial court's most current order.

The change to legal custody also resurrects parental rights already deemed terminated. The reason why a permanent custody request is treated differently from a consideration of alternative dispositions is the termination of all parental rights. This is why all procedural and substantive legal protections are in place for a hearing for permanent custody.

The purpose of placing children in permanent custody is to facilitate their adoption. Support for this contention is found in R.C. 2151.416, which governs administrative review of the case plan prepared for a child by an agency. If after reviewing the written summary of the administrative review or the case plan, the juvenile court determines that the custody or care arrangement is not in the best interest of the child, it may terminate the custody of the agency and give custody to another public or private organization, society, association, agency, or individual certified pursuant to R.C. 5103.02 and 5103.03. R.C. 2151.416(G). If the juvenile court holds an administrative review hearing of a child in permanent custody, it may:

"[D]etermine what actions are required by the custodial agency and of any other organizations or persons in order to facilitate an adoption of the child and make any appropriate orders with respect to the custody arrangement or conditions of the child, including, but not limited to, a transfer of permanent custody to another public children services agency or private child placing agency."  R.C. 2151.417(F)(3).

Clearly, both of these sections seek to have the child adopted.  If the agency with custody seems unable to find an adoptive family for the child, then the juvenile court may change the child's custody to another agency in order to facilitate an adoption.

The trial court's order would thwart any chance of these children finding a permanent adoptive home.  All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.  See *In re Adoption of Yoder* (1989), 62 Ohio App.3d 820, 577 N.E.2d 692.  In a case involving a dispute over the respective authority of juvenile and probate courts, the Supreme Court of Ohio noted that the state has a strong interest in the permanent placement of children. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055, 1060. Legal custody places the children in a temporary arrangement subject, pursuant to R.C. 2151.417, to the continuing jurisdiction of the juvenile court.  This situation conceivably could.last until Shampail and Hastings are emancipated. This hardly serves the state's interest in finding a permanent placement for children in its care.

Throughout this case, it has been apparent that the juvenile court has sought to impede, interfere with, or halt proceedings in probate court involving these children.  Twice, on August 3, 1994, and October 12, 1994, the trial court entered an order forbidding CCDCFS or any prospective adoptive parent from appearing at the hearing in probate court concerning the Abdullahs' adoption petition. It scheduled a hearing for the same time as one being held in probate court.  And then, in this case, the trial court did succeed in stopping appellants' petition for adoption from being heard in probate court by vacating permanent custody the day before appellants' petition was to be heard.

Jurisdiction over adoption proceedings is vested exclusively in probate court.  *In re Biddle* (1958), 168 Ohio St. 209, 6 O.O.2d 4, 152 N.E.2d 105, paragraph one of the syllabus.  In *State ex rel. Hitchcock, supra,* one of the many decisions by this court arising from this case, the court held that the continuing jurisdiction of the juvenile court did not present a jurisdictional bar to adoption proceedings in probate court.  *Id.,* 97 Ohio App.3d at 604, 647 N.E.2d at 210. The probate court may exercise its jurisdiction in adoption proceedings while

**104**

juvenile court has continuing jurisdiction over custody. The adoption hearing can go forth in the probate court even if the juvenile court may not agree with a specific adoption. *Id.* at 605, 647 N.E.2d at 210–211. The juvenile court's power and involvement in an adoption should be no greater than a guardian's or agency's. *Id.* at 608, 647 N.E.2d at 212–213.

The trial court's order of June 29, 1995, resulted in preventing the probate court from hearing appellants' adoption petition. In reality, the order is an assessment of appellants' fitness to be adoptive parents. The trial court discussed extensively appellants' obstruction of planned visitation with the children's sister, the adoptive daughter of the Abdullahs, and appellants' relationship with the media, especially the arrangement with a production company to produce a movie and the eventual publication of a book. The trial court questioned whether one motivation of appellants in desiring to adopt these children was to receive an adoption subsidy. It also expressed concerns regarding appellant Cherie Burich's capabilities as a parent and her lack of knowledge and understanding regarding African–American culture. These are matters that would properly be considered by the probate court under a best interests of the child standard.

The probate court has complete jurisdiction over the parties and subject matter of the adoption proceedings before it. *In re McTaggart* (1965), 4 Ohio App.2d 359, 33 O.O.2d 447, 212 N.E.2d 663. The probate court has the power to fully hear and determine an adoption proceeding. See *State ex rel. Portage Cty. Welfare Dept. v. Summers* (1974), 38 Ohio St.2d 144, 67 O.O.2d 151, 311 N.E.2d 6. That power includes the determination over the fitness of the parties to be adoptive parents. The trial court's order deprived the probate court of its jurisdiction to make the determination of appellants' fitness to adopt Hastings and Shampail.

In its opinion of June 29, 1995, which was read from the bench, the trial court quoted from a motion filed by the guardian *ad litem*, in which she stated that the probate court's standards for adoption may only take into consideration whether the prospective adoptive parents are qualified rather than whether the adoption is in the best interests of the children. This statement ignores a long line of cases which hold to the contrary. The goal of adoption statutes is to protect the best interests of the children. *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 665 N.E.2d 1070. "The cornerstone of the adoption statutes is the promotion of children's welfare, specifically those children who lack and are in need of the security and benefits of a loving home and family." *In re Adoption of Kohorst* (1992), 75 Ohio App.3d 813, 817, 600 N.E.2d 843, 846. Adoptions are to be decided on a case-by-case basis through the exercise of discretion by the probate court, giving due consideration to all known factors in determining what is in the adoptive children's best interest. *In re*

*Adoption of Charles B.* (1990), 50 Ohio St.3d 88, 552 N.E.2d 884, paragraph three of the syllabus. The best interests of Shampail and Hastings would be a consideration in any adoption proceedings as well as the fitness of appellants to parent these children.

The trial court overstepped its bounds when it determined appellants were not fit to be the adoptive parents of the Hitchcock children. That is for the probate court to decide. The power to grant or deny an adoption rests with the probate court. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055, 1060. The trial court's ruling represented a *de facto* denial of appellants', adoption petition.

Our resolution of the issues does not determine the fitness of the parties to adopt. Under the law, that determination is reserved to the probate court. Should the probate court deny the adoption petition, the case is returned to the jurisdiction of the juvenile court for consideration of other dispositional options.

The trial court abused its discretion in vacating the permanent custody of Shampail and Hastings. That order is vacated. Permanent custody is restored to CCDCFS. Appellants' adoption petition is to be heard and decided by the probate court.

Appellants' sixth, seventh, and tenth assignments of error are sustained.

IX

Because of the disposition of the sixth, seventh, and tenth assignments of error, appellants' eleventh assignment of error is moot.

The judgment is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

NAHRA and O'DONNELL, JJ., concur.