OPINION
This is an appeal from the Ashtabula County Court of Common Pleas, Juvenile Division. Appellant, Kelly Evancic, appeals the trial court's judgment entry dated April 3, 1998, awarding permanent custody of her daughter, Veronica Donnelly ("Veronica"), to appellee, the Ashtabula County Children Services Board.
Appellee obtained temporary custody of Veronica on July 25, 1995. On August 14, 1997, appellee filed a motion requesting the modification of temporary custody of Veronica to a permanent commitment. The motion was heard on November 6, 1997, and February 25, 1998. Several witnesses testified at the hearing, all of who were presented in behalf of appellee. Appellant attended the hearing on November 6, 1997, but failed to appear on February 25, 1998.
At the hearing on November 6, 1997, an Alcoholics Anonymous sponsor ("AA sponsor"), testified that she met appellant ten or twelve years ago, but did not become her sponsor until June 29, 1996. About six months later, appellant's AA sponsor discontinued sponsoring appellant because of her inability to comply with her sponsor's instructions to facilitate her sobriety. The AA sponsor stated that appellant did not regularly attend her Alcoholics Anonymous meetings and she believed that appellant was not committed to the program. The AA sponsor also recalled that appellant "expressed concern over her mother's drinking," and thought that her mother was an alcoholic.
Following appellant's AA sponsor's testimony, appellee's attorney called Officer Rusty White ("White"), of the village of Chardon Police Department. He warranted that he was dispatched to the home of appellant and her husband on June 21, 1997. Upon his arrival, appellant told him that she had stabbed her husband in self-defense. White also stated that appellant appeared to be under the influence of drugs because "she had very severe mood swings * * * when she was taken into custody."
Ronald J. Konkley ("Konkley"), a therapist, related that he attempted to do a chemical dependency assessment on appellant on May 21, 1997. He obtained enough information from testing appellant to prove that there was "a very high possibility that [appellant] is dependent on alcohol or some other drug." In the midst of Konkley's testimony, appellant interrupted and announced that she was not feeling well. The trial court decided to "finish this one witness and then break for the day." When Konkley resumed his testimony, he indicated he was unable to complete the assessment because appellant did not attend her second appointment. However, he believed that he gathered sufficient information from the first appointment to offer a diagnosis. He stated that since appellant claimed that she had not used alcohol or cocaine in over a year that the proper diagnosis would be "poly substance abuse or poly substance dependence, in complete full remission." After Konkley testified, court was adjourned.
On February 25, 1998, when the hearing continued, appellant's attorney moved for a continuance because appellant telephoned his office and left a message on his voice mail that she would be unable to attend as she did not have a ride. Appellant also called the court and informed one of the personnel that her mother was being taken to the hospital. The judge overruled the motion and stated that "it would work a substantial prejudice upon [appellee] to grant another continuance for the reasons that [appellant] has stated to [her attorney] and to the [c]ourt."[1] Thereafter, appellant's attorney moved to withdraw as counsel. He listed several reasons for his request, which included: (1) appellant's failure to keep her scheduled appointments; (2) appellant's lack of cooperation; and (3) appellant's failure to attend the hearing. The trial court granted appellant's attorney's motion and reasoned that he was "placed in an untenable position as an attorney for a client who has exhibited almost a complete lack of communication with [him] and [his] office."
After appellant's attorney was excused from the hearing, appellee called their next witness, Officer Matthew Delise ("Delise"). He testified that on July 19, 1997, he was dispatched to a Dairy Mart in Chardon Village. A clerk at the store reported a "white female in the store acting unusual * * *. [S]he was trying to buy wine with welfare stamps." When Delise arrived at the scene, he found appellant sleeping under a tree. She appeared disoriented, lethargic, and her speech was slurred making it difficult to understand her. Appellant was arrested and seated in Delise's cruiser. While in the rear of his cruiser, appellant vomited and was transported by the rescue squad to the hospital where she tested .29 for blood alcohol. Delise stated that appellant was very uncooperative and became verbally abusive with the hospital staff.
The next witness to testify was Tiffany Hammond ("Hammond"), an intake social worker for the Cuyahoga County Department of Family and Children Services ("CCDFCS"). Hammond stated that in August of 1997, appellant left her youngest daughter, Gabrielle, with a family friend, and was to return that same day to retrieve her. When she did not return to pick her up, a report was made to the agency. By the time Hammond responded to the call, appellant had picked up her daughter. She also recalled a second occurrence that happened on November 17, 1997, which was similar to the August incident. Appellant dropped her child off at a stranger's home. Some time later, appellant asked her mother to find the child because she was unsure where she left her. A complaint was filed, which consisted of allegations that appellant had a drug dependency problem, lack of stable housing, and a history of abandonment. Hammond explained that appellant was willing to cooperate, but she was difficult to contact. She failed to keep her appointments and appear for court hearings. Gabrielle was placed in foster care and the case was ultimately transferred to Lake County.
At the conclusion of Hammond's testimony, appellee called Olga Christou ("Christou"), who stated that she is also employed by the CCDFCS and was assigned to be the ongoing caseworker for appellant. She met with appellant, her mother, and Gabrielle on December 28, 1997. At the meeting, appellant informed Christou that she was starting a new job, beginning counseling, and seeing a therapist. Christou indicated that placing Gabrielle with appellant's mother was not an option as she lived in a one-bedroom apartment in an adult community where children were not allowed. Appellant admitted to using crack cocaine and alcohol, but claimed that she had been clean for several months. Appellant further stated that when she and her husband separated that "she lost everything that meant anything to her and went out on a binge[,] but then after [CCDFCS took] Gabrielle into [their] care[,] she started to clean up her act." Christou mentioned that Gabrielle's case was transferred to Lake County on February 8, 1998.
At the conclusion of Christou's testimony, Kathy Kasputis ("Kasputis"), an ongoing caseworker employed by appellee, stated that she had been involved in appellant's case since June 30, 1995. She mentioned that Veronica was born May 2, 1995. She warranted that on June 30, 1995, the Conneaut Police Department informed her of a disturbance at appellant's home. Kasputis arranged for Veronica to stay with the neighbors. The following day, the police again contacted Kasputis to report that appellant had been arrested for criminal trespassing and resisting arrest. After appellant's arrest, Veronica was placed in foster care. Appellant was subsequently released and rearrested because she tested positive for cocaine. Her probation was revoked and she was sent to prison until January 24, 1996. According to Kasputis, during her incarceration, a case plan was developed for appellant which was mailed to her in prison. After appellant's release from prison on January 24, 1996, she was rearrested on January 25 for resisting arrest and public intoxication. Appellant requested a desire to set up visitation with Veronica, but the visits were sporadic. Kasputis explained that before appellant and her husband separated, the visits were the most consistent, but after the separation the visits became more infrequent.
Furthermore, Kasputis indicated that she conducted a home study to see if placement of Veronica with appellant's mother would be appropriate. However, Kasputis was informed that appellant's mother lived in a one-bedroom apartment where children were not allowed. Kasputis admitted that appellant was able to maintain a stable residence once for four months and once for seven months, but never any longer. Kasputis also suggested that through her investigation she discovered that appellant and her mother had a very volatile relationship. Specifically, she believed that appellant's mother was verbally abusive towards appellant.
Regarding appellant's case plan, Kasputis informed the trial court that appellant had not completed her psychological evaluation assessment or medical evaluation. She did complete her psychiatric evaluation. Further, appellant did not obtain a stable residence and failed to comply with the AA sponsor. Additionally, six semi-annual reviews were scheduled that appellant was notified of by mail, but she attended none. Commencing on February 20, 1996, Kasputis requested random urinalysis a few different times, but appellant did not comply. In October of 1996, appellant sent Kasputis a letter stating she would be willing to take a random drug test. However, in May 1997, when Kasputis requested that appellant take a random test, she was unable to produce enough urine. In June 1997, appellant agreed to submit herself to urinalysis four times a week. Kasputis stated that she complied for about three and one-half weeks. The results from these tests were positive for some types of prescription drugs. Kasputis implied that the urinalysis tests ended prior to appellant's arrest for stabbing her husband. Kasputis testified that after the stabbing incident, she became aware of several other incidents that proved that appellant was unable to maintain stability and sobriety.
Kasputis also had a chance to observe appellant and Veronica, and believed that Veronica was hesitant to be involved with appellant because she did not know her. Kasputis noted that appellant's mother's interaction with Veronica was also very minimal. Kasputis stated that she feels that Veronica needs a legally secure placement. She also indicated that the child's father is unknown. She spoke to an individual who believed that he was the father. She informed him that he should obtain a lawyer to establish paternity if he wished to be on the case plan, but he never contacted her.
In a letter dated February 26, 1998, appellant and her mother indicated that they were unable to attend the hearing because appellant's mother had suffered a severe asthma attack and was transported by ambulance to the hospital. Subsequently, on March 12, 1998, appellee filed "Findings of Fact and Conclusions of Law" with the trial court and the guardian ad litem filed a report and recommendation. On March 16, 1998, appellant wrote the trial judge a second letter stating that the information contained in the guardian ad litem's report was inaccurate. Appellant also sent the trial judge a third letter dated March 30, 1998. In both of the March letters, appellant and her mother begged the trial judge to transfer the case to Lake County and to award custody of Veronica to appellant's mother. On April 3, 1998, the trial court granted appellee permanent custody of Veronica after indicating that it had considered the testimony of the witnesses that testified at the hearing and the statutory factors contained in R.C. 2151.414(D). Appellant timely filed a notice of appeal and raised the following assignment of error:
 "The trial court erred in allowing a motion for permanent custody hearing to proceed without the appellant and immediately after the court permitted appellant's attorney to withdraw as counsel."
Appellant's sole contention is that the trial court erred in allowing a permanent custody hearing to proceed without appellant being present and directly after appellant's attorney's motion to withdraw as counsel was granted. However, appellee asserts that that the trial court did not abuse its discretion regarding either issue.
The state may permanently terminate parental rights where the parents are unfit. State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6,10. The United States and Ohio Constitutions' guarantees of due process and equal protection require that indigent parents be provided with counsel and a transcript in actions for the permanent, involuntary termination of parental rights. Id. at paragraph two of the syllabus. The parties are afforded every procedural and substantive protection allowed by law because the termination of parental rights is the family law equivalent of the death penalty in a criminal case. In re Smith (1991), 77 Ohio App.3d 1, 16. "These protections are given only where an award of permanent custody is being considered because, under permanent custody, all of the parent's rights to his or her child are terminated." In re Hitchcock
(1996), 120 Ohio App.3d 88, 101. Furthermore, in permanent custody cases, parents are entitled to the effective assistance of counsel.In re Travis Children (1992), 80 Ohio App.3d 620, 625; see, also, Inre Allen R. (Mar. 31, 1997), Lucas App. No. L-96-093, unreported, at 3, 1997 WL 152082
In the case at hand, the record reflects that appellant was not present at the February 25, 1998 hearing. Further, her attorney was not at the hearing as he was excused immediately after his motion to withdraw had been granted. On the morning of the hearing, appellant left messages with her attorney and the court that she would be unable to attend because she did not have a ride. She requested a continuance, but her request was denied. We do not dispute appellee's contention that appellant's absence and her attorney's frustration level were both directly attributable to appellant's continuing course of irresponsible conduct. However, because the instant matter involved a permanent custody situation, appellant should have been afforded the guarantees of both the due process and equal protection clauses of the constitution underHeller. Yet, appellant was not afforded these rights.
Despite the additional burden on the court, the court must do more than was done here. After reviewing the record, it is our determination that the trial court committed prejudicial error and infringed on appellant's constitutional rights. The appointed attorney was initially present, but the trial court allowed the attorney to withdraw from the case midway through the final hearing when the court should have either required the attorney to proceed since appellant had the right to be represented or, in the alternative, grant a continuance in order to have an attorney present. Appellant's attorney was also excused without any notice to appellant or without the granting of a continuance. Other means were available to the court to ensure appellant's presence and representation by counsel. Accordingly, appellant's argument is well-founded.
For the foregoing reasons appellant's assignment of error is well-taken and the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division is reversed and this cause is remanded for proceedings consistent with this opinion.
 __________________________________________________________ JUDGE JOSEPH E. O'NEILL, Ret., Seventh Appellate District, sitting by assignment.
CHRISTLEY, P.J., NADER, J., concur.
[1] The hearing was initially scheduled for January 26, 1998. However, appellee requested a continuance, which the trial court granted. Furthermore, appellant also was unable to attend that hearing.