The juvenile court terminated the parental rights of mother Vernita Brent and awarded permanent custody of her two children, Lanetta and La'Nece, to the Cuyahoga County Department of Children and Family Services (the "agency"). Mother appeals, complaining (1) that the court lacked clear and convincing evidence to terminate her parental rights, (2) the agency did not prove that it made reasonable efforts to reunify her and her children, and (3) that the agency substantially denied her visitation with Lanetta because the child's foster mother was allowed to be present during visitation.
Mother tested positive for the presence of cocaine at the October 1994 birth of her first child, La'Nece. La'Nece's maternal grandmother took over the child's care just before the child's second birthday. Although the grandmother had explicit directions not to permit the mother to have unsupervised visitation, a social worker discovered the mother and an unidentified male alone with La'Nece. The agency then placed La'Nece in the same foster home as her sister. Just days after her placement in that foster home, La'Nece started complaining and crying when she needed to use the bathroom. A medical examination revealed that La'Nece suffered from genital herpes. About a month later, the foster parents noticed that La'Nece had been acting out in a sexual manner with her stuffed toys. Social workers then concluded that La'Nece had been sexually molested. Because La'Nece presented additional parenting challenges in addition to those presented by Lanetta, the agency removed La'Nece from the foster mother's house and placed her in a different home.
Mother likewise tested positive for cocaine at Lanetta's birth in April 1996. Born three months early, Lanetta tested positive for cocaine toxicity and suffered from hydrocephalus, breathing problems and sleep apnea. Lanetta's hydrocephalus required doctors to place a shunt in her brain to drain fluid into her abdomen. The county placed Lanetta in foster care with caregivers who had specialized training in caring for Lanetta's needs.
During the time that both children were in foster care, the agency adopted a case plan trying to reunify the children and the parents. As the case plan related to mother (father is not a party to this appeal), it required her to complete parenting classes and drug treatment. Mother failed to comply with drug treatment, so the agency filed a February 1998 motion for permanent. In that motion, the agency claimed that mother had not only failed to complete the drug treatment program, she also tested positive for cocaine just one month earlier. The motion also alleged that mother failed to complete a parenting education program and often frequently arrived late for visitation with her children.
The court conducted a hearing on the motion to modify custody over an eight-month period beginning in December 1998 and concluding in August 1999. At the conclusion of the hearing, the court found the agency proved the allegations of the complaint by clear and convincing evidence; that the agency made reasonable efforts to prevent the children from being removed from their home; that the parents had failed continuously and repeatedly to remedy the conditions causing the children to be placed outside their home; and that the parents had failed or refused to provide basic necessities, regular support and visitation to the children. The court ordered the agency to assume permanent custody of the children, and incorporated into its judgment entry a case plan calling for both children to be placed by adoption.
 I
In her first assignment of error, mother complains the agency failed to make a good faith effort to reunify her and her children. She maintains the agency did not offer to assist in training her to meet the special needs of each child, despite her deep desire and willingness to do so, and in fact excluded her from their care.
When a children services agency has removed a child from the child's home, it bears the burden of showing it has "made reasonable efforts to prevent the removal of the child from his home, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." R.C. 2151.419(A). The agency must undertake "* * * reasonable case planning and diligent efforts * * * to assist the parents to remedy the problems that initially caused the child to be placed outside the home * * *." R.C. 2151.414(E)(1). The issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In the Matter ofTirado (Jan. 22, 1998), Mahoning App. No. 97 CA 26, unreported, citing Inre William S. (1996), 75 Ohio St.3d 95, 99; In re Fast (Mar. 25, 1992), Summit App. No. 15282, unreported.
In June 1996, when the agency assumed temporary custody of the children, it adopted a case plan that required mother to enter an in-patient drug treatment facility, submit to random drug screenings and attend Alcoholic's Anonymous meetings. The case plan called for mother to visit with her children at least twice per month for two hours.
By December 1997, mother had still not complied with the case plan requirement that she complete the drug treatment. In the agency's February 1998 motion for permanent custody, it noted that the mother had not completed drug treatment and had tested positive for cocaine as late as January 1998. The agency represented that mother frequently arrived late for her visitations, and sometimes left during visitation in order to retrieve a toy or snack that she forgot to bring with her.
The guardian ad litem for the children offered her opinion that it would be in the best interests of the children for the agency to assume permanent custody. A court-appointed psychologist, noting mother's four past failures at drug treatment, rendered his opinion that the agency be granted permanent custody. He based his opinion on the progress the children had made in their respective foster homes.
When we consider mother's assignment of error against this factual backdrop, we cannot conclude the agency failed to make a good faith effort to reunify her with her children at the time it filed its motion for permanent custody. Any future chance of reunifying the family hinged on mother's successful drug rehabilitation, for her addiction posed a very real threat not only to her own health, but also to the children's safety and well-being. La'Nece's medical needs required lucid and capable caregivers, and there is no doubt that La'Nece's foster parents had received specialized instruction in how to deal with the hydrocephalus. The agency could very reasonably conclude that mother's drug addiction required her primary focus, and that instruction on taking care of the medical needs of her children were secondary.
We addressed a similar kind of argument in In re Hauserman (Feb. 3, 2000), Cuyahoga App. No. 75831, unreported. In Hauserman, we rejected a contention that a parent had not been given sufficient opportunity to learn to care for the special medical needs of a child when that parent had not provided for the basic needs of her children who did not require specialized medical attention.
In this case, the children had medical needs beyond those of most other children. Lanetta tested positive for cocaine toxicity at her birth. In addition to her hydrocephalus, she had breathing problems and sleep apnea. La'Nece has genital herpes and must learn to deal with the sexual abuse that likely caused her herpes. Lanetta's condition required specialized care. La'Nece's foster mother testified that she received a minimum of twenty-one hours per year in training and could fully care for La'Nece's special needs.
Given these circumstances, we cannot say the agency failed to make reasonable efforts to assist mother in meeting the special needs of her children, when mother's own needs required her primary focus. The first assignment of error is overruled.
 II
The second assignment of error complains that mother was unlawfully denied meaningful visitation and the opportunity to bond with Lanetta because the agency permitted Lanetta's foster mother to intrude during visits.
R.C. 2151.33(B)(1) permits a court to grant visitation in situations where allegations of neglect or abuse have been made, but not adjudicated. Visitation orders must take into account the best interests and are reviewable for an abuse of the court's discretion.
At the time the agency took temporary custody of the children, the case plan called for mother to have semi-monthly, one hour visits. A social service aide who supervised the visits testified that the foster parents were present during the visitations because Lanetta "had a problem with being left alone with the parents * * *." The aide said that they tried arranging the visits so that the foster mother would not sit in on the visits, but Lanetta cried until the foster mother appeared. The foster mother corroborated the aide's testimony, saying that the visitations were very traumatic for Lanetta and she would cry if left alone with mother.
Mother did not complain about this situation at a time when the court could have done something about it. "State ex rel. Quarto Mining Co. v. Foreman" (1997), 79 Ohio St.3d 78, 81. In any event, given Lanetta's lack of familiarity with mother (having been removed at birth) we cannot say that the agency's decision to permit the foster mother to be present as a stabilizing presence in Lanetta's visitation constituted a substantial impediment to mother's goal of reunifying with the child. The second assignment of error is overruled.
 III
The third assignment of error complains the court lacked clear and convincing evidence to support its decision to terminate mother's parental rights. Mother argues she remedied the conditions that caused the children to be removed from her home; therefore the court's findings were not supported by the evidence.
R.C. 2151.414(E) provides that if the court finds by clear and convincing evidence that one or more of the enumerated factors exist, the court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Those factors include whether the parent has failed "continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home" and whether the parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child. R.C. 2151.414(E)(1) and (4). The overriding goal in any child custody case is to reach a disposition that is in the child's best interests. In re Hitchcock (1996), 120 Ohio App.3d 88. A reviewing court will not overturn a permanent custody determination unless the court's findings are arbitrary, capricious or unreasonable. Inre Awkal (1994), 95 Ohio App.3d 309, 318.
The court first decided to grant permanent custody to the agency on grounds that mother had not substantially remedied the conditions causing the children to be placed outside the home. As documented in the several case plans filed with the court, mother was to complete parenting classes and remain drug free. Mother completed the parenting classes, so the primary dispute at trial centered on her drug treatment.
The court heard testimony in December 1998, March 1999 and December 1999. As of March 1999, mother had been clean for two months, having failed a drug test in January 1999. However, by the time the court concluded the hearing that following December, mother had been drug free for eleven months. During that eleven-month period she passed over forty random drug tests.
Had the court concluded the hearing immediately, it might be safe to say that we would have found no abuse of discretion with a finding that mother failed to remedy her drug addiction. But after eleven months of sobriety, it appears to us that mother has taken substantial steps toward rehabilitation.
The agency minimizes mother's progress by citing to a psychologist's testimony that mother would have to be drug-free for two years before he would consider her suitable. That same psychologist also admitted that he could not address the current situation of mother's fitness because a considerable amount of time had passed since he completed his evaluation process. By his own admission, mother's current status was unknown to him and would likely affect his opinion.
The agency disputes the significance of mother's eleven months of negative drug tests, saying they were more the product of the day those tests were administered rather than a reflection on mother's sobriety. The tests administered during this eleven-month period occurred on Tuesdays, Wednesdays and Fridays. The agency claims that most positive drug tests occur on Mondays, the day following weekend use. It claims that when testing occurred on Mondays (prior to this eleven month period of negative drug tests) mother failed those tests.
The difficulty with this argument is that it undermines the methodology of the very program that the agency is relying upon to certify mother's sobriety. If the agency is to require drug rehabilitation as part of a case plan, it cannot turn around and question the competency of that testing. This would render suspect any successful completion of drug rehabilitation. More importantly, it would make it virtually impossible for parents with drug addictions to regain custody of their children, for the agency could continually question the accuracy of test results.
None of what we have said here is intended to convey the impression that we believe mother's eleven-month period of sobriety is sufficient in and of itself to permit her to regain full custody of the children. Mother still needs to show that she can attend to the special medical needs of the children. Moreover, mother's past history of drug use is sufficiently pervasive enough that caution is warranted. As always, the court's consideration of the best interests of the children will be paramount.
Nevertheless, we recognize that the right to raise a child is an "essential" and "basic" civil right, In re Murray (1990), 52 Ohio St.3d 155,157, 556 N.E.2d 1169, 1171, quoting Stanley v. Illinois (1972),405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558, so we approach cases involving the termination of parental rights with due regard to that right. Mother's eleven-month period of sobriety was significant progress toward the case plan, and the court appeared to give this no credit at all. Upon further rehearing, the court must examine mother's current progress toward completing the case plan.
 Likewise, the court's finding that mother has shown an "unwillingness to provide an adequate permanent home for the children" is not supported by evidence adduced toward the end of the trial. Mother's determination to complete drug treatment speaks well of her willingness to provide for her children. It is true that at trial her employment prospects were poor. Much of her difficulty in finding or holding a job may well be attributable to her drug addiction. If mother has successfully completed drug rehabilitation, her prospects for finding gainful employment may well have increased. That is a matter the court must look into on remand.
We therefore vacate the permanent custody order, reinstate temporary custody to the agency, and remand this matter for a rehearing on the agency's motion for permanent custody. The third assignment of error is sustained.
Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellees her costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J.,
KENNETH A. ROCCO, J., CONCURS.
 ________________ PRESIDING JUDGE JOHN T. PATTON