JOURNAL ENTRY and OPINION
Appellant Nichole Sims appeals from the trial court's decision which terminated her parental rights and granted permanent custody of her children, Francine, Shadae, and Demonte, to the Cuyahoga County Department of Children and Family Services (CCDCFS). For the reasons below, we affirm the judgment of the trial court.
On March 2, 1998, Sims' children were placed in the custody of CCDCFS after Demonte tested positive for cocaine at birth. On June 4, 1998, CCDCFS filed a complaint seeking temporary custody of the children. On July 8, 1998, CCDCFS took temporary custody of the children upon Sims' admitting to an amended complaint for dependency. On February 22, 1999, CCDCFS filed a motion to modify temporary custody to permanent custody.
Hearings were held on the permanent custody motion on March 30, May 11, June 23, and October 26, 1999, and February 9, March 10, April 14, July 6, July 7, and September 26, 2000.
At the June 23, 1999 hearing, Randy Felder, the alleged father, made his first appearance and, as a result, the trial was continued to October 26, 1999. On October 26, the trial was continued for service on the other alleged fathers and to afford Felder, who had just been released from prison, an opportunity to take a paternity test and establish a relationship with the children. Thereafter, additional hearings were held on February 9, March 10, and April 14, 2000.
On April 21, 2000, an agreed entry was filed which continued the case until July 6, 2000 to allow Sims the opportunity to continue her compliance with the case plan, with the understanding that if she remained sober the children would be reunited with her at the next hearing.
At the July 2000 hearings, test results excluded Felder as the father of any of the children, so he was dismissed from the action, and the trial was continued until September 26, 2000.
The CCDCFS family advocate responsible for monitoring Sims' drug treatment testified that Sims has a long history of doing well while in treatment, but relapsing post-treatment. A CCDCFS social worker recounted Sims' history with CCDCFS. She stated that the family first became involved with CCDCFS in 1993. At that time, Sims was incarcerated on drug charges. Legal custody of Francine was granted to her great-grandmother. In April 1996, Shadae was born and tested positive for cocaine. Shadae was removed from the home, and Sims underwent a drug treatment program. In February 1997, the children were reunified with Sims and the case was closed. Thereafter, in February 1998, Demonte was born, testing positive for cocaine, which led to the current removal of the children.
Sims completed drug treatment in August 1998. However, Sims contacted CCDCFS and asked that visitation with her children be temporarily stopped because she was concerned that the relative with whom she was living was using drugs. She refused relapse prevention assistance and the offer to relocate the visits.
Thereafter, from October 1998 through June 1999, Sims saw the children on only one occasion. During this time CCDCFS was unable to contact Sims, and she failed to show up at scheduled visitations. However, after July 1999, Sims regularly attended visitation.
As stated above, in April 2000, it was agreed that Sims would be reunited with her children if she continued to remain sober. However, Sims began avoiding her regularly scheduled drug tests. She claimed that the tests conflicted with her work schedule, but she was not at work when the family advocate called. Despite the April 14, 2000 reunification plan, Sims tested positive for PCP on April 14, April 21, May 3, and May 11, 2000.
Further, Sims admitted to CCDCFS that Felder was using PCP. CCDCFS advised Sims that the children could not be reunited with her if she continued to live with Felder because of his drug use. Sims' drug counselor confirmed CCDCFS's suspicion that Sims continued to live with Felder. In fact, Sims was living with Felder until approximately two weeks before the final adjudication hearing held on September 26, 2000.
Both the social worker and the family advocate stated that it is CCDCFS's policy to wait to reunite a parent with her children until after the parent has maintained six months of sobriety after the completion of a drug treatment program.
At the September 26, 2000 hearing, Sims' drug counselor testified that Sims was actively participating in a drug treatment program and had been sober for approximately four months. She further testified that, at the earliest, Sims' treatment would end in November 2000.
After the completion of the adjudication hearings, the trial court requested that counsel submit dispositional recommendations. Each party submitted its brief. The guardian adlitem for the children recommended that all three children be placed in the permanent custody of CCDCFS.
On November 1, 2000, the trial court found, by clear and convincing evidence, that it was in the best interest of the children to grant permanent custody to CCDCFS.
 I. THE JUVENILE COURT'S DETERMINATION THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS IT WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE OF THE REQUISITE FACTORS ENUMERATED IN R.C. 2151.414(E).
In her first assignment of error, Sims contends the court abused its discretion when (1) it granted permanent custody of her children to CCDCFS in the absence of clear and convincing evidence and when (2) it determined that her children could not be placed with her in a reasonable period of time.
A reviewing court will not overturn a permanent custody determination unless the court's findings are arbitrary, capricious or unreasonable. In re Hughley (Oct. 26, 2000), Cuyahoga App. No. 77052, unreported, citing, In re Awkal (1994), 95 Ohio App.3d 309, 318, 642 N.E.2d 424.
The overriding goal in any child custody case is to reach a disposition that is in the child's best interest. Id., citing, In re Hitchcock (1996), 120 Ohio App.3d 88, 696 N.E.2d 1090. In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with the child's parents, siblings, and foster parents, the wishes of the child, the custodial history of the child, and the child's need for a legal secure permanent placement.
Here, the record reveals that the children have been placed with the same foster family for a substantial amount of time. At the time of the July 6, 2000 hearing, the children had been residing together at their foster home for over two years. Specifically, Demonte has been with the foster family since birth, and Shadae has been with her foster mother since the age of two. The children have developed a close bond with their foster family. Francine's therapist testified that Francine suffers from an adjustment disorder due to her unstable home situation. Since 1993, Francine has lived with Sims, her great-grandmother, Sims again, and has now been in foster care for over two years. The therapist testified that it is important for Francine to have a stable home environment. She further testified that Francine has strong reservations about living with Sims, and that she plans on running away if her mother returns to her drug use.
The guardian adlitem recommended that permanent custody be granted. Accordingly, we find that there is clear and convincing evidence that supports the trial court's determination that permanent custody is in the best interest of the children.
In addition to determining the child's best interest, the court must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C.2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply.
Here, as the parties agree, the trial court implicitly found that R.C.2151.414(E)(2) and (4) are applicable. R.C. 2151.414 (E)(2) and (4) provide as follows:
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child * * *.
The trial court found that R.C. 2151.414(E)(4) applied because Sims failed to visit or communicate with her children, except for one visit, for a period of approximately eight months in 1998 and 1999.
The court also found that R.C. 2151.414(E)(2) applied because Sims has a drug problem and has demonstrated a pattern of relapse after treatment. The court further found that, as recently as April and May of 2000, Sims tested positive for cocaine and THC1.
The testimony reveals that Sims has been beset with drug problems since 1993. Although the trial court erroneously stated the types of drugs for which Sims tested positive, she nonetheless tested positive for PCP in April and May during the course of her case plan, just prior to the July 6, 2000 hearing at which the court had established that she would be reunited with her children had she remained clean and sober.
Sims contends that the trial court failed to follow R.C. 2151.414(E)(2) with respect to determining whether her children could be reunified with her within a reasonable time. In making a finding under R.C.2151.414(E)(2), the court was required to determine whether Sims could provide an adequate permanent home for [her children] * * * within one year after the court holds the hearing pursuant to division (A) of this section. R.C. 2151.414 (A)(1) requires the court to hold a hearing after a motion for permanent custody is filed.
Sims maintains that in this case the one-year time period referred to in R.C. 2151.414(E)(2) should have commenced on September 26, 2000, the date of the last hearing on the permanent custody issue. However, neither R.C. 2151.414(A) nor R.C. 2151.414 (E)(2) provide guidance on which date a trial court should use when the R.C. 2151.414(A) hearing has been continued.
Sims did not test positive for cocaine or THC in April or May 2000; she did test positive for PCP.
Presumably, the statute assumes that a single adjudicatory hearing will be held. Here, however, the trial court conducted the hearing on the motion for permanent custody over an eighteen-month period, beginning in March 1999 and concluding in September 2000.
However, although R.C. 2151.414 does not give specific guidance, R.C.2151.414(E) does require the trial court to determine whether the child can be returned to his parents within a reasonable period of time. Thus, the trial court did not have unfettered discretion in choosing which hearing date to use in making its determination. Based on the reasonableness standard, we conclude that March 30, 1999, the date that the permanent custody hearing commenced, is the appropriate date from which the trial court should have determined whether Sims could provide an adequate permanent home for the children within one year. According to the record before the court, Sims failed to achieve sobriety or establish a permanent home environment for her children despite being given eighteen months to do so.
Further, as stated in R.C. 2151.414(E), In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. (Emphasis added.)
Here, for reunification to have been possible pursuant to CCDCFS policy, Sims would have had to remain sober for six months after her treatment was completed. Her counselor testified that the best case scenario completion date would be November 2000, but could be as late as January 2001. And, these dates were dependent on Sims remaining sober during this time. Thus, reunification would not have been possible pursuant to CCDCFS policy until May 2001, at best. By that time, the children would have been with their foster family for a total of three years. Certainly, this is relevant to the determination of whether reunification would be possible within a reasonable period of time.
Further, based on Sims' previous history, it was uncertain if she would remain sober during this time. Clearly, the children's need for stability overrides Sims' uncertain sobriety and desire for reunification with her children. As we stated in In re Hughley (Oct. 26, 2000), Cuyahoga App. No. 77052, unreported, the court's consideration of the best interests of the children will be paramount.
Thus, we find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Accordingly, we affirm the trial court's decision because it was not made in an arbitrary, capricious or unreasonable manner. Therefore, Sims' assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J., and TIMOTHY E. McMONAGLE, J., CONCUR